## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

**BID FOR POSITION, LLC,**

      **Plaintiff,**

      **v.**

**AOL, LLC, GOOGLE, INC.,
MICROSOFT CORP., and MIVA, INC.,**

      **Defendants.**

**CASE NO. 2:07-cv-582 JBF/TEM**

    **Jury Trial Demanded**

**<u>Plaintiff Bid For Position, LLC's Claim Construction Brief</u>**

# TABLE OF CONTENTS

*Page*

I.      Introduction.................................................................................................1

II.     "first" and "second" ...................................................................................1

        A.      Bid For's construction conforms with an undisputed patent
                law convention .........................................................................2

        B.      Disputed issue: "other than" versus "that is different from the
                first"..........................................................................................2

III.    "maintain"...................................................................................................3

        A.      No construction necessary ........................................................3

        B.      Disputed issue: "keep" versus "continue or keep" ....................4

IV.     "information for selecting one of the two or more positions of priority that
        the first bidder wishes to maintain in the auction" (claim 1); and "selected
        one of the two or more positions of priority that the first bidder wishes to
        maintain in the auction" (claim 11)...........................................................6

        A.      No construction is necessary. ...................................................6

        B.      Disputed issue 1: "entered by the bidder"..................................7

        C.      Disputed issue 2: "that indicates the bidder's express choice of."............7

                1.      Defendants' proposed construction is contrary to the
                        phrase's ordinary meaning. .........................................8

                2.      The ordinary meaning of the claim language was not
                        disavowed in the specification or prosecution history. ...................9

V.      "selected position of priority"...............................................................10

        A.      No construction is necessary...................................................10

        B.      Disputed issue 1: "expressly chosen by the bidder"...............11

        C.      Disputed issue 2: "specific position"......................................12

VI.     "checking for whether a first bid from the first bidder exceeds a
        second bid from the second bidder"........................................................14

A.  Bid For's construction is consistent with the phrase's ordinary meaning. ..................................................................... 14

B.  Disputed Issue 1: "verifying, comparing, inspecting, or ascertaining" versus "determining" ................................................ 15

C.  Disputed issue 2: "a bid" versus "the bid" ............................ 16

D.  Disputed issue 3: "greater than" versus "larger than" ............ 17

E.  Disputed issue 4: "bid from" versus "bid entered by" ........... 18

VII.  "the auction for determining continuing priority for providing an ongoing service" ........................................................ 19

A.  No construction is necessary. ........................................... 19

B.  Disputed issue 1: "continuing priority" versus "priority for each instance" ..................................................................... 20

C.  Disputed issue 2: "ongoing service" versus "service provided during a continuing period" .............................................. 21

VIII.  "wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid, and wherein the relative position of priority for providing the service for the second bidder is dependent on whether the value of the second bid exceeds the value of the first bid" ................. 22

A.  No construction necessary. ............................................... 22

B.  Disputed issue 1: "value" versus "amount" ........................ 23

C.  Disputed issue 2: "dependent on" versus "always gets priority" ...................................................................... 24

D.  Disputed issue 3: "exceeds" versus "higher" ...................... 24

IX.  "input device" .................................................................. 25

A.  Bid For's construction is consistent with the term's ordinary meaning. ...................................................................... 25

B.  Disputed issue 1: "at the bidder's location" ........................ 26

C.  Disputed issue 2: "bidder terminal or other entry device" ...... 27

X.  Conclusion. ...................................................................... 28

# I.    Introduction.

Plaintiff Bid For Position, LLC ("Bid For") owns U.S. Patent number 7,225,151 ("'151 patent") for an "Online Auction Bid Management System and Method," which covers a system that automatically manages an online, continuous auction.

The parties agreed upon the following constructions:

| Claim term or phrase | Agreed construction |
|---|---|
| *"bid"* | "an offer of a price" |
| *"incrementing the first bid"* | "increasing the first bid" |

The parties disagree over eight terms and phrases.  This brief presents Plaintiff Bid For's arguments in support of its proposed claim constructions and in opposition to the constructions proposed by Defendants.  As will be seen, each of Bid For's constructions are supported by the ordinary and customary meaning to one of ordinary skill in the art at the time of the invention, the context of the claim language, the patent specification, and the prosecution history.

# II.    *"first"* and *"second"*

| Bid For | Defendants |
|---|---|
| *"first"* and *"second"* are used in the claim to distinguish two instances of the same thing.  For example, "first bid" means a bid other than a "second bid," and "first bidder" means a bidder other than a "second bidder."  The terms "first" and "second" do not refer to time sequence. | The terms "first bid" and "second bid" are used to distinguish one bid from another bid that is different from the first.<br><br>The terms "first bidder" and "second bidder" are used to distinguish one bidder from another bidder that is different from the first.<br><br>The terms "first" and "second" do not refer to time sequence. |

## A. Bid For's construction conforms with an undisputed patent law convention.

The claims use the terms "*first*" and "*second*" to refer alternately to "first bid" and "second bid" and "first bidder" and "second bidder." When used in a patent claim, the terms "*first*" and "*second*" do not refer to time sequence or relative placement, but instead are used to distinguish between repeated instances of the same thing. *Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1348 (Fed. Cir. 2005) ("As we have previously held, 'the use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation'") (*quoting 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003)).

Bid For's construction conforms directly with this undisputed patent law convention and is divided into three parts. *First*, the construction summarizes the rule ("'first' and 'second' are used in the claim to distinguish two instances of the same thing"). *Second*, the construction gives an example of how this rule applies to the specific claim terms ("for example, 'first bid' means a bid other than the 'second bid'"). *Third*, the construction explains that the terms do not refer to time sequence ("the terms 'first' and 'second' do not refer to time sequence"). Bid For's construction encompasses the full meaning of the terms, does not contain excess verbiage, and will be clearly understood by the jury.

## B. Disputed issue: "other than" versus "that is different from the first."

Defendants' construction correctly explains that "*first*" and "*second*" are used to distinguish one from another. But Defendants add the additional limitation that the two things being distinguished must be different: "that is different than the first." This limitation is inappropriate. Rather, the proper construction should say that the first item is an item "other than" the second, as set forth in Bid For's proposal.

*First*, there is nothing in the ordinary meaning of "*first*" and "*second*" requiring that the words that they modify be different. (For example, a first bid by a first bidder may be $1.00 and a second bid by a second bidder may also be $1.00). And the ordinary meaning controls because neither the specification nor the file history contain "an intentional disclaimer, or disavowal, of claim scope by the inventor," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc), "using words or expressions of manifest exclusion or restriction," *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004).

*Second*, as set forth above, patent convention confirms that the terms "*first*" and "*second*" reference things that are not necessarily different. Rather, the terms can distinguish "repeated instances." *Free Motion Fitness*, 423 F.3d at 1348. "Repeated instances" can be multiple instances of the same thing. Thus, Defendants' construction is contrary to the controlling law, and Defendants' attempt to include the limitation "that is different from the first" should be rejected.

## III.  "*maintain*"

| Bid For | Defendants |
|---|---|
| No construction necessary. <br><br> *Alternative construction*:  continue or keep | keep |

### A.  No construction necessary

The term "*maintain*" is used in the claims of the '151 Patent in the context of allowing a bidder to "*maintain*" a position in the auction, for example:

- "the received bid management data including information for selecting one of the two or more positions of priority that the first bidder wishes to *maintain* in the auction" ('151 patent, Ex. 1, Col 14:9-12); and

- checking for whether the first bid is higher than needed to *maintain* the selected position of priority that the first bidder wishes to *maintain* in the auction (*id*. at 14:32-35).

In this context, the term "*maintain*" is unambiguous and easily understood by jury. Thus, there is no reason to construe the term.

Should the court decide that the term "*maintain*" needs to be construed, Bid For proposed the following construction: "continue or keep." To construe this element, we start with the presumption that the words have "their ordinary and customary meaning," *i.e.*, "the meaning that the term would have to a person of ordinary skill in the art." *Phillips*, 415 F.3d at 1312-13. The ordinary meaning of "maintain" is "to keep up or carry on; continue." *See* Ex. 3, *The American Heritage Dictionary of the English Language* 1055 (4th ed. 2000); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("to keep in existence or continuance"); Ex. 2, *Webster's Dictionary* 1362 (3rd International ed. 2002) ("to persevere in : to carry on: keep up: continue"). The ordinary meaning of "*maintain*" includes the concepts of both (a) keeping, and (b) continuing. Accordingly, should the court decide that the term "maintain" needs to be construed, Bid For proposed the following construction consistent with the term's ordinary meaning: "continue or keep."


**B.      Disputed issue: "keep" versus "continue or keep."**

Defendants' proposed construction of "maintain" limits the term to only one component of its ordinary meaning - "keep." While "keep" and "continue" are similar concepts, they are not identical. "Keep" suggests the concept of possession – "to retain possession of." Ex. 3, *The American Heritage Dictionary of the English Language* 957 (4th ed. 2000). *See also*, Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("to hold or retain in one's possession"). "Continue," in contrast, has a temporal component – "To go on with a particular action or in a particular condition." Ex. 3, *The American Heritage Dictionary of the English Language* 398 (4th ed. 2000).

Here, the ordinary meaning of "*maintain*" includes both the concepts of "keep" and "continue." To construe this term to mean just "keep" would be to give this term something less than its ordinary and customary meaning.

In fact, Defendants proposal does not interpret the claim, but, instead rewrites the claim. Defendants' replace the word in the claim, "maintain," with a different word, "keep," whose meaning is not identical to the word in the claim. It is improper to rewrite the claim in the guise of interpretation.

Furthermore, there is nothing in the claim language, specification, or prosecution history to warrant limiting "*maintain*" to something less than its ordinary and customary meaning. The specification does not include "an intentional disclaimer, or disavowal, of claim scope by the inventor" of the phrase "*maintain*." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed Cir. 2005) (en banc). To the contrary, the specification specifically describes an embodiment where the auction determines "continuing" priority for position: "As it receives bids from bidder terminals 175, the online bid management system 102 prioritizes the bids periodically. The online bid management system 102 determines *continuing* priority for providing an ongoing service to the bidders." ('151 patent, Ex. 1, Col. 3:25-28.) Therefore, there is no basis to deviate from the ordinary meaning "*maintain*" and exclude the concept of "continue." Accordingly, to the extent this Court believes the term must be construed, "*maintain*" should be construed to mean "continue or keep."

*///*

*///*

*///*

**IV.    "information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction" (claim 1); and "selected one of the two or more positions of priority that the first bidder wishes to maintain in the auction" (claim 11)[1]**

| Bid For | Defendants |
|---|---|
| No construction necessary (except for the individual terms that will be separately construed) | Information entered by the bidder that indicates the bidder's express choice of one of the two or more positions of priority in the auction |

### A.    No construction is necessary.

This disputed phrase appears in the following context in claim 1:

"the received bid management data including *information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction*."

('151 patent, Ex. 1, Col 14:9-12.)  The phrase is used in the context of describing what information is included in the "bid management data" received from a first bidder.  The phrase is clearly understandable to a jury, and free from ambiguity in defining what information is included.  Therefore, no construction is necessary.  In fact, Defendants agree that the terms "information," "one of the two or more positions of priority," "bidder," and "in the auction" are unambiguous and require no construction, as each of these terms appears in Defendants' proposed construction.  The only other terms in the phrase – "for selecting" and "wishes to maintain" – are equally unambiguous and will be understood by the jury.

Defendants' construction has two components:  (1) a restriction on how the information is acquired by the system (a relatively minor issue), and (2) what the information constitutes.  Both components are wrong, and are addressed in turn.

---

[1]    In the Joint Statement of Claim Terms in Controversy, this disputed phrase appears below "selected position of priority."  However, because in the claims the phrase "selected position of priority" refers back to this phrase, Bid For addresses this phrase first in its claim construction brief.

**B.      Disputed issue 1**:  **"entered by the bidder."**

Defendants' construction includes a limitation that the bid management data must be "entered by the bidder."  Though a relatively minor issue, this construction is inappropriate for several reasons.

*First*, to construe this element, we start with the presumption that the words have "their ordinary and customary meaning," *i.e.*, "the meaning that the term would have to a person of ordinary skill in the art."  *Phillips*, 415 F.3d at 1312-13.  There is nothing in the words of the claim to suggest that the ordinary meaning of the phrase includes a limitation restricting how the information is acquired by the system.   Moreover, because neither the specification nor file history includes "an intentional disclaimer, or disavowal, of claim scope by the inventor," *Phillips*, 415 F.3d at 1316, "using words or expressions of manifest exclusion or restriction," *Innova*, 381 F.3d at 1115, there is no basis to deviate from the ordinary meaning of the phrase.

*Second*, in the claim, the bid management data will come from a bidder, but not because that concept is found in the phrase that Defendants' seek to construe.  Rather, that occurs because other claim language expressly states: "receiving bid management data from a first bidder."  ('151 Patent, Col 14:6.)  But even this other claim language does not require that the information is "entered by" the bidder.  Defendants' proposed interpretation, therefore, is in part redundant of express claim language, and in part incorrect.

**C.      Disputed issue 2**:  **"that indicates the bidder's express choice of."**

Defendants' construction also improperly redefines the scope of the information – from information "for selecting [positions] that the first bidder wishes to maintain" to information "that indicates the bidder's express choice of [positions]."  The plain language of the phrase only requires that the bid management data include information "for selecting" one of the positions.  Defendants' construction includes the additional

limitation that the bid management data must include the bidder's <u>express</u> choice of one of the positions in the auction. This attempt to redefine the phrase to require the bidder to <u>expressly</u> choose a specific position is wrong for the following reasons.

> **1.      Defendants' proposed construction is contrary to the phrase's ordinary meaning.**

We start with the presumption that the words have "their ordinary and customary meaning," *i.e.*, "the meaning that the term would have to a person of ordinary skill in the art." *Phillips*, 415 F.3d at 1312-13. Information for "selecting" a position is information for making a choice of a position. *See* Ex. 2, *Webster's Dictionary 2058* (3rd Int'l ed. 2002) ("select" means "to make a choice or selection"). On the other hand, information that indicates an <u>express</u> choice of position is information requiring that the bidder made an explicitly stated, specific choice. *See* Ex. 3, *The American Heritage Dictionary of the English Language* 627 (4th ed. 2000) ("(1) definitely and explicitly stated"; (2) "particular; specific"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("express" means "(1) definitely and explicitly stated"; (2) "particular; specific").

The phrase in Claim 1 that Defendants seek to construe states that the bid management data received from the bidder need only "includ[e] information <u>for selecting</u>" one of the two or more positions in the auction. ('151 Patent, Ex. 1, at 14:9-10.) The phrase "for selecting" includes several possible ways the position could be selected. For example, a specific position could be selected by the bidder; or the position could be inferred from the data provided by the bidder; or the bidder could choose a range of acceptable positions (*i.e.*, the highest position it can attain). By it proposed construction, Defendants seek to limit the claim to just one possible way the position is selected – through the express choice of the bidder. This new limitation is contrary to the ordinary meaning of the phrase.

There is nothing in the claim language to support the Defendants' proposed additional limitation:   that the bidder must <u>expressly</u> choose one of the two or more

positions available in the auction. The term "express" (or synonymous language) is not contained anywhere in the claims or the specification. Though "information for selecting" may include information indicating an express choice, as described above, it also may not. Thus, it is inappropriate to construe the broader "selecting" (the term used in the claim) to mean the narrower "express choice."

A related principle is that it is improper to rewrite a claim to add a modifier that is not found in the claim. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1118 (Fed Cir. 2004) ("In the absence of modifiers general descriptive terms are typically construed as having their full meaning"). Defendants' construction adds a modifier -- "express" -- that does not exist in the claims. If the inventor had intended that the claim be limited to instances when the bidder makes an "express" choice of position, that word would have been included in the claim.

### 2. The ordinary meaning of the claim language was not disavowed in the specification or prosecution history.

To limit the phrase to only a portion of the scope of its ordinary meaning – "express choice" – the specification or file history must include "an intentional disclaimer, or disavowal, of claim scope by the inventor," *Phillips*, 415 F.3d at 1316, "using words or expressions of manifest exclusion or restriction," *Innova*, 381 F.3d at 1115. Neither the specification nor prosecution history include such a definition or an express disavowal such that the phrase information "for selecting [positions] that the first bidder wishes to maintain" is limited to information "that indicates the bidder's express choice of [positions]."

Moreover, the specification supports the broader definition of "for selecting" that includes both express and implied selections:

> The system checks for whether the bidder's desired position is met for the particular web page and term, step 208. For example, the system checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listing the bidder's web page. Another

> example allows the bidder to choose a position, such as fourth in the
> results listing.

('151 Patent, Ex. 1, at 4:50-56.)  As this portion of the specification demonstrates, the bidder's desired position may be a specific position (such as fourth position) or an implied position (trying to exceed as may other bids as possible based on the amount the bidder is willing to spend).  Accordingly, rather than including "an intentional disclaimer, or disavowal, of claim scope by the inventor" of the phrase "selecting," *Phillips*, 415 F.3d at 1316, one of the preferred embodiments specifically contemplates that the bidder may not expressly choose a specific position.    Accordingly, the specification does not support deviating form the phrase's ordinary meaning.

## V.    "selected position of priority"

| Bid For | Defendants |
|---|---|
| No construction necessary.<br><br>*Alternative construction 1*:  the position of priority selected from the bid management data received from a first bidder<br><br>*Alternative construction 2*:  "selected" means "chosen based on fitness or preference."  No construction is necessary for "position of priority." | The specific position expressly chosen by the bidder |

### A.    No construction is necessary.

The phrase "selected position of priority" is used in the context of a bidder that holds or seeks to maintain a "selected position of priority":

- "checking if a second bidder holds the *selected position of priority*" ('151 Patent, Ex. 1, Col 14:13-14);

- "to thereby maintain the *selected position of priority*" (*id*. at 14:29-30);

- "higher than needed to maintain the *selected position of priority*" (*id*. at 14:32-33); and

- "allows the bidder to keep the *selected position of priority*" (*id*. at 14:38-39).

In this context, the term is unambiguous and needs no construction.

Defendants acknowledge that "position" and "priority" are not ambiguous and need no construction, because the term "position" is contained in Defendants' construction of this phrase, and "position of priority" occurs in Defendants' construction of another disputed term (*see* IV above).

The "selected" position of priority refers back to step [a] of Claim 1 which discloses that the bid management data received from the first bidder includes

> "information *for selecting* one of the two or more positions of priority that the first bidder wishes to maintain in the auction."

(*Id*. at 14:6-12.)  Though Bid For believes it is clear that "*selected*" means selected from the bid management data, to the extent there is any ambiguity, the phrase "*selected position of priority*" should to be construed to explain from what source the selection is made:  "the position of priority selected from the bid management data received from a first bidder."

Alternately, to the extent the court believes the term "*selected*" needs to be construed, it should be given its ordinary and customary meaning, "chosen based on fitness or preference."  *See* Ex. 2, *Webster's Dictionary* 2058 (3rd International ed. 2002) ("chosen from a number or group by fitness or preference"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("to choose in preference to another or others").

### B.     Disputed issue 1:  "expressly chosen by the bidder."

Defendants again includes an additional limitation that the bidder must "expressly" choose a position.  As explained in greater detail above (section IV(B)), there is no basis to read this additional limitation into the claims because:

● Defendants' "express" limitation is not part of the phrase's "ordinary and customary meaning," *Phillips*, 415 F.3d at 1312-13;

● Defendants' construction improperly reads into the claims a modifier – expressly – that does not exist in the claims (*Innova*, 381 F.3d at 1118 ("In the absence of modifiers general descriptive terms are typically construed as having their full meaning"));

● The claim language itself provides that the bidder need not expressly select a position but, rather, need only provide data "for selecting" a position ('151 patent, Col. 14:9-10); and

● the specification and prosecution history do not include "an intentional disclaimer, or disavowal, of claim scope by the inventor" of the phrase "*select*" (*Phillips*, 415 F.3d at 1316) but rather support the ordinary meaning that position is not expressly chosen by the bidder: "For example, the system checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listing the bidder's web page. Another example allows the bidder to choose a position, such as fourth in the results listing" ('151 Patent, Ex, 1, Col 4:50-56).

C.     **Disputed issue 2:  "specific position."**

In construing "selected position of priority," Defendants add a limitation that the "position of priority" must be a <u>specific</u> position, *i.e.*, the bidder selects position number four ("specific position"), rather than the bidder selects the highest position available ("position").  There is no basis for including this limitation.

*First*, it is improper to rewrite a claim to add a modifier that is not found in the claim.  *Innova*, 381 F.3d at 1118 ("In the absence of modifiers general descriptive terms are typically construed as having their full meaning").  The modifier "specific" is not found in the claims.  As such, Defendants' construction inappropriately reads into the claims a modifier that does not exist in the claims.  If the inventor had intended that the

selected position of priority to be a _specific_ position chosen by the bidder, it would have been included in the claim. It's not – and should not be read in.

_Second_, there is nothing in the specification that would limit the term "selected position of priority" to a specific position chosen by the bidder. The specification does not include "an intentional disclaimer, or disavowal, of claim scope by the inventor" of the phrase "_selected position of priority._" _Phillips_, 415 F.3d at 1316. Instead, the specification discloses embodiments where the bidder may desire something other than a _specific_ position (_e.g._, position number four), such as the highest position available:

> The system checks for whether the bidder's desired position is met for the particular web page and term, step 208. For example, the system checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listing the bidder's web page [the highest position available]. Another example allows the bidder to choose a position, such as fourth in the results listing [specific position].

('151 patent, Ex. 1, Col 4:50-56.) This portion of the specification provides an example of how a bidder may seek either (a) a specific position, or (b) to obtain the highest position it is able to obtain, which is not a specific position.

_Third_, adopting Defendants' construction would inappropriately limit the claimed invention to one embodiment in the specification. It is well settled that claims should not be limited to an embodiment contained in the specification. _See Verizon Servs. Corp. v. Vonage Holdings Corp._, 503 F.3d 1295, 1303 (Fed. Cir. 2007) ("This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification" (internal quotes omitted)); _Phillips_, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").

Here, Defendants seek to limit the claims to only the embodiment where the bidder desires a specific position. Defendants' attempt to limit its construction to one embodiment should be rejected.

## VI. "checking for whether a first bid from the first bidder exceeds a second bid from the second bidder"

| Bid For | Defendants |
|---|---|
| "checking" means "verifying, comparing, inspecting, or ascertaining"; the rest of the phrase requires no construction<br><br>*Alternative construction*: "checking" means "verifying, comparing, inspecting, or ascertaining"; "exceeds" means "greater than"; and the rest of the phrase requires no construction | determining whether the bid entered by the first bidder is larger than the bid entered by the second bidder |

### A. Bid For's construction is consistent with the phrase's ordinary meaning.

To construe this element, we start with the presumption that the words have "their ordinary and customary meaning," *i.e.*, "the meaning that the term would have to a person of ordinary skill in the art." *Phillips*, 415 F.3d at 1312-13. The ordinary meaning of "*checking*" is verifying, comparing, inspecting or ascertaining. *See* Ex. 3, *The American Heritage Dictionary of the English Language* 1316 (4th ed. 2000) ("The act or an instance of inspecting or testing, as for accuracy or quality"); Ex. 2, *Webster's Dictionary* 381 (3rd International ed. 2002) ("(a) to compare with source of information (as an original, another version, a record, or body of data): verify, often used with or against; (b) to inspect and ascertain the condition of esp. out about: investigate and ensure accuracy, authenticity, reliability, safety or satisfactory performance of"). The rest of the phrase is unambiguous and requires no construction.[2]

Alternatively, the term "exceeds" should be construed to mean "greater than." The ordinary meaning of "exceeds" is to be greater than or go beyond. *See* Ex. 2, *Webster's Dictionary* 791 (3rd International ed. 2002) ("to be greater than or superior to:

---

[2] The parties agree on a construction of "*bid*," and the terms "*first*" and "*second*" are addressed in section II, above.

surpass"); Ex. 3, *The American Heritage Dictionary of the English Language* 619 (4th ed. 2000) ("To be greater than; surpass"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("To be greater than; surpass"). Thus, the ordinary meaning of "checking whether a first bid exceeds a second bid" is "verifying, comparing, inspecting, or ascertaining whether a first bid is greater than a second bid."

**B. Disputed Issue 1: "verifying, comparing, inspecting, or ascertaining" versus "determining."**

Defendants construe "checking" to mean "determining." There is no basis for such a construction.

*First*, words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. The ordinary meaning of *"checking"* is "determining." Determining has a number of meanings, but can have the connotation of to settle or decide, or to conclude after reasoning and observation. *See* Ex. 3, *The American Heritage Dictionary of the English Language* 495 (4th ed. 2000) ("To decide or settle (a dispute, for example) conclusively and authoritatively"); Ex. 2 *Webster's Dictionary* 616 (3rd International ed. 2002) ("to settle a question or controversy"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("(1) to settle or decide (a dispute, question, etc.) by an authoritative or conclusive decision; (2) to conclude or ascertain, as after reasoning, observation, etc."); Ex. 5, *Random House Webster's Dictionary* 193 (4th ed. 2001) ("to settle or resolve (a dispute, question, etc.) conclusively"). While *"checking"* connotes some form of <u>inquiry or investigation</u> (verifying, comparing, inspecting, ascertaining), in contrast, "determining" may connote some form of <u>conclusion</u> (settle, decide, conclude). Accordingly, *"checking"* does not necessarily result in determining.

Because the two terms do not mean the same thing, Defendants' proposal does not *interpret* the claim language. Rather, Defendants *rewrite* the claim by replacing "checking" with "determining."

*Second*, to limit the term to only a portion of the scope of its ordinary meaning, the specification or file history must include "an intentional disclaimer, or disavowal, of claim scope by the inventor," *Phillips*, 415 F.3d at 1316, "using words or expressions of manifest exclusion or restriction," *Innova*, 381 F.3d at 1115. Neither the specification nor prosecution history include such a definition or an express disavowal such that the phrase "*checking*" is limited to "determining."

*Third*, the claims themselves demonstrate that "*checking*" cannot be limited to "determining." When a claim includes different terms, the different terms generally have different meanings. *Innova*, 381 F.3d at 1119-20 ("when an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms"). The word "determining" is used throughout in the claims and, in each instance, the word is used to connote a conclusion or a decision. *See* claim 1 '151 patent, Ex. 1, Col. 14:3 ("the auction for determining relative priority"); *id.* at 14:17 ("the auction for determining continuing priority"). That the word "determining" is used throughout the claims demonstrates (1) "determining" and "*checking*" have different meanings, and (2) if the inventor wanted to claim an invention for "determining whether a first bid from the first bidder exceeds a second bid from the second bidder" rather than "checking for whether a first bid from the first bidder exceeds a second bid from the second bidder" the inventor would have used the word "determining" (which is found throughout the claim), rather than "checking for."

### C.    Disputed issue 2:  "a bid" versus "the bid."

"It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'" *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005) (internal quotes and cites omitted). The claim uses the general "a" to reference "bid," not the more limiting "the." Accordingly, Defendants' construction,

which incorporates the limiting "the" rather than the modifier actually used – "a" – should be rejected.

### D. Disputed issue 3: "greater than" versus "larger than."

As discussed above, the term "*exceeds*" does not require construction. If "*exceeds*" were construed, it should be given the meaning "greater than," not the Defendants' proposed "larger than."

We start with the presumption that "words have their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312-13. The ordinary meaning of "*exceeds*" is greater than. *See* Ex. 2, *Webster's Dictionary* 791 (3rd International ed. 2002) ("to be greater than or superior to: surpass"); Ex. 3, *The American Heritage Dictionary of the English Language* 619 (4th ed. 2000) ("To be greater than; surpass"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("To be greater than; surpass"). Defendants construe "*exceeds*" to mean "larger than." There is no basis for the Defendants' construction. In contrast to the ordinary meaning of "*exceeds*," the term "larger" connotes size. *See* Ex. 3, *The American Heritage Dictionary of the English Language* 987 (4th ed. 2000) ("Of greater than average size, extent, quantity, or amount"). Though something that "exceeds" may also be "larger than," this is not always the case. (For example, a car that exceeds the speed limit is not larger than the speed limit.) Thus, "larger than" is merely a subset of "exceeds." There is nothing in the claims or specification to suggest that "*exceeds*" should be limited to just one subset of its ordinary meaning. To the contrary, the specification suggests that "*exceeds*" was intended to have its ordinary meaning: "Otherwise, the system increases the bid without *exceeding* the maximum bid entered by the bidder." ('151 patent, Col 4:60-62.) In this context, "*exceeding*" means a bid that is greater than or surpasses a maximum bid; not a bid that is larger in size than a maximum bid. This demonstrates that there is no basis to deviate from the ordinary meaning of "*exceeds*" or to limit the term to mean only "larger than."

**E.     Disputed issue 4: "bid from" versus "bid entered by."**

Defendants construe "*a first bid from a first bidder*" and "*a second bid from a second bidder*" to mean bids "entered by" the bidder.  Thus, while the claim only requires that the bid be "from" a bidder, Defendants seek to further limited the claim to require that the bid actually be "entered by" the bidder.  There is no basis for this construction.

<u>*First*</u>, Defendants' construction "entered by the bidder" is inconsistent with the actual claim language.  The starting point for construing a claimed phrase is the claims themselves.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention").  "Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.  Step (d) of Claim 1 discloses "automatically incrementing the first bid" ('151 patent, Ex. 1, Col 14:27), and step (f) of Claim 1 discloses "automatically reducing the first bid" (*id*. at 14:37).  When the claimed system automatically increments or decreases the bid, though the bid is still "from" the first bidder (*i.e.*, the bid is made on behalf of the first bidder), that bid is not "entered by" the first bidder – that is, the bid is not directly entered by the bidder.  Rather, the bid is automatically used by the system without the bidder having to enter the bid.

<u>*Second*</u>, claims should not be construed in a manner than renders the claims incapable of supporting the preferred embodiment.  In general, claims should be construed to include the preferred embodiment.  *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) ("[I]t is axiomatic that a claim construction that excludes a preferred embodiment . . . 'is rarely, if ever correct and would require highly persuasive evidentiary support'").  In addition to finding support in the claims themselves, the concept of a method that automatically adjusts a first bidder's bid is depicted on Figure 2 of the '151 patent, an illustrative diagram.  Fig 2 depicts how

a bid is automatically increased or decreased (boxes 210 and 212). The system then checks whether the automatically adjusted bid achieved the desired position (box 216). That adjusted bid, however, was not entered by the bidder. Instead, the bid was the output of boxes 210 and 212. If the claim were limited to require that the bids be entered by the bidder, then the automatic bid adjustment process could not occur.

## VII. "the auction for determining continuing priority for providing an ongoing service"

| Bid for | Defendants |
|---|---|
| No construction necessary.<br><br>*Alternative construction*: "continuing priority" means "ongoing priority" and "ongoing service" means "a service that is ongoing, continuing or in progress" | the auction that determines priority for each instance that a service is provided during a continuing period |

### A. No construction is necessary.

This phrase appears in Claim 1 as follows:

> checking for whether a first bid from the first bidder exceeds a second bid from the second bidder in *the auction for determining continuing priority for providing an ongoing service* for the first and second bidder, wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid, and wherein the relative position of priority for providing the service for the second bidder is dependent on whether the value of the second bid exceeds the value of the first bid

('151 patent, Ex. 1, Col. 14:15-25.)

This phrase is unambiguous and requires no construction. In fact, six of the seven words contained in this phrase are repeated in Defendants' proposed construction: auction, determining (determines), continuing, priority, providing (provided) and service. Thus, even Defendants acknowledge that those terms do not require construction. The

only term that does not appear in Defendants' construction is "ongoing." "Ongoing," however, is unambiguous and will be easily understood by a jury.

### B. Disputed issue 1: "continuing priority" versus "priority for each instance."

Defendants construe "*continuing priority*" to mean "priority for each instance." There is no support for this construction.

*First*, words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. However, "for each instance" is not the ordinary meaning of "continuing." "Continuing" means ongoing. *See* Ex. 3, *The American Heritage Dictionary of the English Language* 398 (4th ed. 2000) ("To go on with a particular action or in a particular condition"); Ex. 2, *Webster's Dictionary* 493 (3rd International ed. 2002) ("to keep going: maintain a course, direction, or progress"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("to go on with or persist in: *to continue an action*").

In stark contrary, "instance" means an occurrence. *See* Ex. 3, *The American Heritage Dictionary of the English Language* 907 (4th ed. 2000) ("a case or occurrence"); Ex. 5, *Random House Webster's Dictionary* 376 (4th ed. 2001) ("a case or occurrence of something"*); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("a case or occurrence of anything"). Something that is continuing may have multiple instances. But that is not always true. Similarly, something that has multiple instances may be continuing, or may not be continuing. Therefore, there is no basis to ascribe the same meaning to "continuing" and "for each instance."

*Second*, there is nothing in the claims or in the specification to suggest that "continuing priority" should be construed to have any meaning other than it ordinary and customary meaning. Accordingly, Defendants' proposed construction must be rejected.

As discussed above, the term "continuing priority" requires no construction. To the extent the court believes it ought to be construed, it should be construed consistent with its customary and ordinary meaning: "ongoing priority."

**C.** **Disputed issue 2: "ongoing service" versus "service provided during a continuing period."**

Defendants construe "ongoing service" to mean "service provided during a continuing period." There is no support for this construction.

Ongoing means continuing or in progress. *See* Ex. 3, *The American Heritage Dictionary of the English Language* 1230 (4th ed. 2000) ("in progress"); Ex. 2, *Webster's Dictionary* 1576 (3rd International ed. 2002) (" the action that is going on"); Ex. 5, *Random House Webster's Dictionary* 503 (4th ed. 2001) ("continuing without interruption"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("continuing without termination or interruption"). Though Defendants' construction includes the term "continuing," Defendants add an additional limitation that the service must be provided during a continuing "period."

A "period" is an interval of time. *See* Ex. 5, *Random House Webster's Dictionary* 534 (4th ed. 2001) ("an interval of time marked by particular qualities, conditions, or events"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("any specified division or portion of time"). Thus, Defendants have added a temporal limitation to their proposed construction – the ongoing service must be provided during a finite division of time. The claims, however, neither disclose nor support such a limitation.

As discussed above, the term "ongoing service" requires no construction. To the extent the court believes it ought to be construed, it should be construed consistent with its customary and ordinary meaning: "a service that is ongoing, continuing or in progress."

///

///

///

**VIII.** **"wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid, and wherein the relative position of priority for providing the service for the second bidder is dependent on whether the value of the second bid exceeds the value of the first bid"**

| Bid For | Defendants |
|---|---|
| No construction necessary.<br><br>*Alternative construction*: "value" means "relative worth, utility, or importance" | where the bidder that bids the higher amount always gets priority over the bidder that bids the lower amount. |

### A. No construction necessary.

This phrase appears in claim 1 as follows:

> checking for whether a first bid from the first bidder
>
> exceeds a second bid from the second bidder in the auction
>
> for determining continuing priority for providing an
>
> ongoing service for the first and second bidder, *wherein the*
>
> *relative position of priority for providing the service for the*
>
> *first bidder is dependent on whether the value of the first*
>
> *bid exceeds the value of the second bid, and wherein the*
>
> *relative position of priority for providing the service for the*
>
> *second bidder is dependent on whether the value of the*
>
> *second bid exceeds the value of the first bid*

('151 Patent, Ex. 1, Col 14:15-25.)

Thus, this phase appears in the context of describing the circumstances of how one bid receives a higher position of priority than another bid, e.g., the position of priority of the first bid depends on whether the value of the first bid exceeds the value of the second bid. Other than to the extent the terms in this phrase have already been construed, the phrase is unambiguous and requires no further construction. In fact, the

only terms in this phrase that are not used in other constructions proposed by the Defendants are "relative," "depend," "value" and "exceeds." Each of these terms is easily understood by a jury.

**B.    Disputed issue 1: "value" versus "amount."**

Defendants construe the "value" of the bid ("value of the first bid" and "value of the second bid") to mean the "amount" of the bid. This construction is wrong for several reasons.

*First*, words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. "Amount" is not the ordinary meaning of "value." Instead, the ordinary meaning of value is relative worth, utility or importance. *See* Ex. 3, *The American Heritage Dictionary of the English Language* 1900 (4th ed. 2000) ("to determine or estimate the worth or value of; appraise"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("relative worth, merit, or importance"); Ex. 2, *Webster's Dictionary* 2530-2531 (3rd Int'l ed. 2002) ("the monetary worth of something: the marketable price usually in terms of a medium of exchange; relative worth, utility, or importance"). In contrast, "amount" is a sum or quantity. *See* Ex. 3, *The American Heritage Dictionary of the English Language* 61 (4th ed. 2000) ("a number; a sum"); Ex. 2, *Webster's Dictionary* 72 (3rd Int'l ed. 2002) ("the total number or quantity"); Ex. 5, *Random House Webster's Dictionary* 23 (4th ed. 2001) ("quantity; measure"); Ex. 4, *Dictionary.com Unabridged (v 1.1)* ("the sum total of two or more quantities or sums"). While "value" is a broad term that connotes a comparison to something else, "amount" is a much narrower term that connotes a specific quantity or amount. Thus, there is no basis to ascribe the same meaning to both terms.

*Second*, limiting "value" to mean "amount" would lead to odd results. For example, on-line search engines (one of the preferred embodiments in the patent) draw a world-wide audience. Not all advertisers bid in dollars. If value were construed to mean amount, then a advertiser who bid 25 pesos would obtain a higher position of priority

than an advertiser that bid 20 cents because 25 is a higher amount than 20 – even though 20 cents is worth more than 25 pesos.  Claims should not be interpreted in a way that leads to such absurd results.

### C.       Disputed issue 2:  "dependent on" versus "always gets priority."

Under Defendants' construction, the bid with the higher value "always" gets the priority over the bid with the lower value.  The claim, however, provides that priority is merely "dependent on" whether the value of the first bid exceeds the value of the second bid.  Thus, Defendants necessarily construe "dependent on" to mean "exclusively dependent on."  If the patentee had intended that the modifier "always" be included in the claims, the patentee would have used the phrase "exclusively dependent on." But no such modifier is present here.  It is improper to rewrite the claims by adding the modifier "always," because that modifier is not found in the claim language.  *Innova*, 381 F.3d at 1118 ("In the absence of modifiers general descriptive terms are typically construed as having their full meaning").

### D.       Disputed issue 3:  "exceeds" versus "higher."

Defendants construe "exceeds" (as in "whether the value of the first bid exceeds the value of the second bid") to mean "higher" ("the higher amount always gets priority").  This construction is inappropriate for two reasons.

*First*, as discussed above, the term "exceeds" is unambiguous and requires no construction.  To the extent it does require construction, the ordinary meaning of the term "exceeds" is "greater than."  (*See* VI(D), above.)  Defendants' construction is overly narrow.  "Higher than" is a very small subset of "exceeds."  If A is higher than B, then A exceeds B (at least with respect to height).  However, A can also exceed B is countless ways having nothing to do with height.  Thus, the two terms cannot be construed to have the same meaning.

*Second*, Defendants use inconsistent definitions for the same claim phrase. "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). "Unless otherwise compelled, when different claims of a patent use the same language, we give that language the same effect in each claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004).

In the phrase "checking for whether a first bid from the first bidder exceeds a second bid from the second bidder," Defendants define "exceeds" to mean "larger than." Here, in contrast, with respect to the phrase "whether the value of the first bid exceeds the value of the second bid," Defendants define "exceeds" to mean "higher than." Furthermore, both instances of "exceed" appear within the same element of Claim 1. ('151 patent, Ex. 1, Col 14:15-25.) It makes no sense that the term "exceed" would mean one thing in one part of claim 1 and mean something different in another part of claim 1.


IX. **"input device"**

| Bid For | Defendants |
|---|---|
| a device for transferring data into a processor system | bidder terminal or other data entry device at the bidder's location |


A. **Bid For's construction is consistent with the term's ordinary meaning**.

The term "input device" appears in Claim 11, in the following context: "an *input device* for receiving bid management data." ('151 patent, Ex. 1, Col 15:8-9.) Thus, the input devices receives the bid management data.

Words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. The ordinary meaning of an "input device" is a device that transfers data into a processor system. *See* Ex. 6, *Oxford Dictionary of Computing*, 262

(5th ed. 2004) ( "Any device that transfers data, programs, or signals into a processor system"); Ex. 3, *The American Heritage Dictionary of the English Language* (4th ed. 2004) ("A device, such as a keyboard, used to enter information into a computer"); Ex. 7, *Webster's New World Computer Dictionary*, 186 ( 10th ed. 2003) ("Any peripheral that assists one in getting data into a computer"). Accordingly, Bid For's construction, which is consistent with this ordinary meaning, is correct.

## B. Disputed issue 1: "at the bidder's location."

The Defendants propose to add the limitation "at the bidder's location" to the construction of this term. The Defendant's construction should be rejected for three reasons.

*First*, the limitation "at the bidder's location" is not part of the ordinary meaning of the phrase "input device." As noted above, words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. Not even Defendants can suggest that the ordinary meaning of the term "input device" includes "at the bidder's location."

*Second*, to include a limitation that is not part of the term's ordinary meaning, the specification or file history must include "an intentional disclaimer, or disavowal, of claim scope by the inventor," *Phillips*, 415 F.3d at 1316, "using words or expressions of manifest exclusion or restriction," *Innova*, 381 F.3d at 1115. Neither the specification nor prosecution history include such a definition or an express disavowal such that the phrase "input device" is limited to only an input device "at the bidder's location" as opposed to other locations.

*Third*, the specification provides embodiments where "input device" is not limited to an input device that is "at the bidder's location." For example, the specification provides that the bid management data from bidders is stored in a bid management server ('151 patent, Ex. 1, Col 3:19-26, 53-58), and that this bid management server can be

centralized or "as an alternative to having a centralized bid management system 102, the online bid management system may be stored locally on one or more bidder terminals." (*Id*. at 4:3-18.) Thus, the specification expressly discloses embodiments where the input device is centralized and not at the bidder's location.

**C.    Disputed issue 2:  "bidder terminal or other entry device."**

As explained above, words of a claim are generally given their ordinary and customary meaning (*Phillips*, 415 F.3d at 1312).  The ordinary meaning of "input device" is not a "bidder terminal entry device."

It is well settled that claims should not be limited to embodiments contained in the specification.  *See Verizon Servs. Corp. v. Vonage Holdings Corp*., 503 F.3d 1295, 1303 (Fed. Cir. 2007) ("This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification" (internal quotes omitted)); *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").  Yet it appears that Defendants' construction is based on specific embodiments set forth in the specification.  References in the specification refer to bids being entered "into the bidder terminals."  *See, e.g.,* '151 patent, Ex. 1, Col 3:37. It is, however, improper to limit the claims to the such preferred embodiments.  "[T]his court will not at any time import limitations from the specification into the claims." *Stumpo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007).  Similarly, the specification describes that "a user <u>may</u> enter a bid into the online bid management system 102 through a bidder terminal 175." ('151 patent, Col 3:19-26.)  This further refutes a definition of input device that <u>must</u> be a "bidder terminal or other entry device."


///

///

///

## X.    Conclusion.

For the foregoing reasons, Bid For's' constructions should be adopted and the Defendants' rejected.

Dated:  May 12, 2008                                    Respectfully submitted,

                                                        BID FOR POSITION, LLC

                                                        By Counsel

/s/_____
R. Braxton Hill, IV (VSB No. 41539)
bhill@cblaw.com
Craig T. Merritt (VSB No. 20281)
Nichole Buck Vanderslice (VSB No. 42637)
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: 804-697-4100
Facsimile: 804-697-4112

Gregory S. Dovel, *p.h.v*
Christin Cho, *p.h.v*
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone:  310-656-7066
Facsimile:  310-657-7069

David Rosen, *p.h.v*
Murphy, Rosen & Cohen LLP
100 Wilshire Boulevard Suite 300
Santa Monica, CA 9040l
Telephone: 310-899-3300
Facsimile: 310-399-7201

ATTORNEYS FOR BID
FOR POSITION, LLC

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 12, 2008, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Richard A Cederoth
*Attorney for Microsoft Corp.*
Sidley Austin LLP
1 S Dearborn St
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (fax)
Email: rcederoth@sidley.com


William David Dolan, III
*Attorney for Microsoft Corp.*
Venable LLP
8010 Towers Crescent Dr
Suite 300
Vienna, VA 22182-5601
703-760-1684
703-821-8949 (fax)
Email: wddolan@venable.com


David Andrew Perlson
*Attorney for Google, Inc.*
Quinn Emanuel Urquhart Oliver & Hedges
50 California St
22nd Floor
San Francisco, CA 94111
(415) 875-6600
Fax: (415) 875-6700
Email: davidperlson@quinnemanuel.com


Stephen Edward Noona
*Attorney for Google, Inc.*
Kaufman & Canoles PC
150 W Main St
PO Box 3037
Norfolk, VA 23510
(757) 624-3239
Email: senoona@kaufcan.com

Robert L. Burns
*Attorney for AOL, LLC*
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
Two Freedon Square
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700
(202) 408-4400 (fax)
Email: robert.burns@finnegan.com


Stephen Edward Noona
*Attorney for AOL, LLC.*
Kaufman & Canoles PC
150 W Main St
PO Box 3037
Norfolk, VA 23510
(757) 624-3239
Email: senoona@kaufcan.com


Paul Douglas Ackerman
*Attorney for MIVA, Inc.*
Dorsey & Whitney, LLP
250 Park Avenue
New York, NY 10117
(212) 415-9200
(212) 953-7201 (fax)
Ackerman.paul@dorsey.com


Dana Johannes Finberg
*Attorney for MIVA, Inc.*
LeClair Ryan PC
PO Box 2499
Richmond, VA 23218-2499
804-916-7109
Fax: 804-916-7219
Email: dana.finberg@leclairryan.com

_____/s/_____
R. Braxton Hill, IV (VSB 41539)
*Attorney for Bid for Position, LLC*
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone:    (804) 697-4100
Facsimile:     (804) 697-4112
Email: bhill@cblaw.com

873157