**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| BID FOR POSITION, LLC, | |
| Plaintiff, | |
| v. | CASE NO. 2:07-cv-582 JBF/TEM |
| AOL, LLC, GOOGLE INC., MICROSOFT CORP., and MIVA, INC., | **Jury Trial Demanded** |
| Defendants. | |

## DEFENDANTS' JOINT RESPONSE BRIEF ON CLAIM CONSTRUCTION

51341/2524513.1

Dockets.Justia.com

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .......................................................................................................................1

I.    Plaintiff Uses the Wrong Legal Standard for Claim Construction. .....................................1

    A.    Plaintiff's Near Exclusive Reliance on Dictionaries Without Reference to the Intrinsic Evidence is Contrary to Law. ...............................................................1

    B.    Construction of Disputed Claim Terms Is Required where the Parties Dispute the Scope of the Disputed Claim Term...................................................................4

II.    "Information For Selecting One of the Two or More Positions of Priority That the First Bidder Wishes to Maintain in the Auction" (Claim 1[a]); "Selected One of the Two or More Positions of Priority That the First Bidder Wishes to Maintain in the Auction" (Claim 11[a]) ...........................5

    A.    The Bidder Must Choose His Desired Position From At Least Two or More Positions of Priority Available in the Auction.........................................................5

    B.    During Prosecution, the Applicant Made Remarks Which Make Clear That the Claim Language Does Not Cover the Two Scenarios That Plaintiff Now Says Are Covered. ...................................................................................................7

    C.    The Specification Text on Which Plaintiff Relies Describes an Unclaimed Embodiment of Konia's Invention, and Is Therefore Irrelevant to the Scope of the Claimed Invention.................................................................................9

    D.    The Specification Makes it Clear That The Bidder *Enters* The Selection of The Position He Wishes To Maintain.....................................................................9

III.    "Selected Position of Priority" (Claim 1[b, d, e, f], 11[b, d, e], 23, 24) ...........................10

    A.    Plaintiff's Alternative Proposed Constructions Conflict With the Specification and the Prosecution History................................................................................11

    B.    Plaintiff's Alternative Proposed Constructions Conflict With the Context of the Disputed Claim Language.......................................................................12

    C.    Defendants' Use of the Word "Specific" in Their Proposed Claim Construction (the *Specific* Position Chosen By the Bidder) Is Supported By the Intrinsic Evidence. .......................................................................................13

IV.    "Checking For Whether a First Bid From the First Bidder Exceeds a Second Bid From the Second Bidder" (Claim 1[c], 11[c])...............................................14

    A.    The Context of the Disputed Claim Language Makes Clear That the "Checking" Step Requires a Determination as to Which Bid Is Larger................14

| | B. | Plaintiff's Own Dictionaries Show That Defendants' Proposed Construction Employs a Standard Definition of "Checking.".....................................................15 |
|---|---|---|

      C.    Defendants' Use of "Entered By the Bidder" in Their Proposed Construction Is Fully Consistent With the Intrinsic Evidence. ....................................................16

      D.    Defendants' Construction Does Not Exclude a Preferred Embodiment...............17

      E.    In the Context of this Claim Language, "Exceeds" Means "Larger Than." ..........18

      F.    "A Bid" Versus "the Bid" Is a Non-Issue. .............................................................19

V.    "Wherein the Relative Position of Priority for Providing the Service for the First Bidder is Dependent on Whether the Value of the First Bid Exceeds the Value of the Second Bid" (and Analogous Limitation Where "First" and "Second" are Interchanged) (Claim 1[c], 11[b]) ................................19

      A.    Intrinsic Evidence Shows That the "Value" of a Bid Is the Bid Amount.............19

      B.    To the Extent a Dictionary Definition of "Value" Is Used, the Correct Definition in the Context of This Patent Is "Amount." .........................................21

      C.    Defendants' Construction Hardly Leads to "Odd Results." ..................................22

      D.    "Dependent On" Means "Always Gets Priority.".................................................22

      E.    Defendants Are Willing to Modify Their Proposed Construction to Accommodate Plaintiff's Concerns About the Consistent Use of "Larger."..........23

VI.    The Auction For Determining Continuing Priority [...] For Providing An Ongoing Service" (Claim 1[c], 11[b]) ...........................................................24

      A.    Defendants' Construction Is Consistent With the Intrinsic Evidence. ..................24

      B.    Rather Than "Adding" a Temporal Limitation, as Plaintiff Asserts, Defendants Are Merely Clarifying the Temporal Limitation That Is Already Present in the Disputed Claim Language.....................................................25

      C.    Bid For Position Equates "Continuing Priority" with "Priority," and Thus Fails to Give Meaning to the Claim Term "Continuing."....................................25

      D.    Bid For Position's Proposed Constructions Do Not Resolve the Dispute Between the Parties Over Claim Scope. .............................................................26

VII.    "Input Device" (Claim 11[a]) ......................................................................................26

VIII.    "First" and "Second" (Claim 1[a, b, c, d, e, f], 11[a, b, c, d, e], 12, 13, 23, 24) .......................................................................................................................28

IX.    "Maintain" (Claim 1[a, d, e, f], 11[a, b, d, e], 23, 24, 28) .................................29

CONCLUSION......................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*E-Pass Techs., Inc. v. 3Com Corp.*,
   473 F.3d 1213 (Fed. Cir. 2007)............................................................................16

*Free Motion Fitness, Inc. v. Cybex Int'l*,
   423 F.3d 1343 (Fed. Cir. 2005)....................................................................2, 21, 29

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
   381 F.3d 1111 (Fed. Cir. 2004).........................................................................3, 4

*LG Electronics, Inc. v. Bizcom Electronics, Inc.*,
   453 F.3d 1364 (Fed. Cir. 2006)..........................................................................9, 10

*Mangosoft, Inc. v. Oracle Corp.*,
   2008 U.S. App. LEXIS 10356 (Fed. Cir. May 14, 2008) ......................................25

*Merck & Co. v. Teva Pharm. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005)............................................................................25

*Microsoft Corp. v. Multi-Tech Sys.*,
   357 F.3d 1340 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 821 (2004)......................20

*Novo Nordisk of North America, Inc. v. Genentech, Inc.*,
   77 F.3d 1364 (Fed. Cir. 1996).............................................................................18

*Nystrom v. Trex Co.*,
   424 F.3d 1136 (Fed. Cir. 2005).........................................................................3, 4

*Nystrom v. Trex Co.*,
   2002 U.S. Dist. LEXIS 27501 (E.D. Va. July 1, 2002) ..........................................8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)..................................................4, 6, 10, 14, 19, 24

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..................................................................... *passim*

*Process Control Corp. v. Hydreclaim Corp.*,
   190 F.3d 1350 (Fed. Cir. 1999).............................................................................12

*Pulse Tech., LLC v. TIVO*,
   419 F.3d 1326 (Fed. Cir. 2005)........................................................................23, 25

*Southwall Techs. Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1996).............................................................................14

# NOTE ON CITATIONS

References to *Plaintiff Bid For Position, LLC's Claim Construction Brief* (May 12, 2008) are indicated by the abbreviation "Pl.Br.," followed by the page number being cited. "Pl.Br.5" therefore refers to page 5 of Bid For Position's opening brief.

References to *Defendants' Joint Opening Brief on Claim Construction* (May 12, 2008) are indicated by the abbreviation "Def.Op.Br.," followed by the page numbers being cited.

The patent-in-suit, U.S. Patent No. 7,225,151, is attached to the previously submitted *Declaration of Antonio Sistos* (May 12, 2008) as Exhibit 1 (referred to herein as "Ex. 1"). References to the patent-in-suit are indicated by column and line number. A reference to "Ex. 1, 3:15" therefore means Column 3, line 15 of the patent-in-suit.

Other exhibits were attached to the *Declaration of Antonio Sistos* (May 12, 2008) as Exhibits 2 through 9. Defendants' other exhibits are referred to with the prefix "Ex." followed by the number of the exhibit in question. "Ex. 2" therefore refers to Exhibit 2.

Defendants have submitted a *Supplemental Declaration of Antonio Sistos* (June 2, 2008), and it contains an Exhibit 10. "Ex. 10" refers to this exhibit.

Exhibits submitted by Plaintiff to accompany its opening brief are referred to herein as "Pl. Ex." followed by the number of the exhibit in question. "Pl. Ex. 3" therefore refers to Exhibit 3 of Plaintiff's submission.

# INTRODUCTION

Defendants have proposed constructions for the entirety of each disputed claim limitation.  Defendants' constructions are supported by the context of the claim language, consistent with the specification, and in accord with the prosecution history.

Bid For Position has adopted a wholly different approach.  For most of the disputed claim terms, Bid For Position argues that no construction is necessary at all.  To be sure, Bid For Position offers some constructions in the event that the Court does decide to construe the claims.  But Bid For Position mostly selects only convenient dictionary definitions for individual words, stripped of their context in the limitations of the claim, rather than construing the entirety of disputed language.

The omissions in Plaintiff's opening brief are striking.  Bid For Position does not even try to explain the supposed invention or how the disputed claim limitations relate to it.  For most of the disputed claim terms, Plaintiff does not address the use of the claim term in the context of the other claim language.  Bid For Position largely ignores the patent specification.  Nor does it discuss the seven years of prosecution history, the eight rejections, or the five amendments, even though much of the disputed claim language was added by amendment and was heavily negotiated during prosecution.

Plaintiff has simply ignored the governing legal standard for claim construction.  When the correct legal standard is employed, Defendants' proposed constructions are the proper ones, and the Court should adopt them *in toto*.

# ARGUMENT

## I.    Plaintiff Uses the Wrong Legal Standard for Claim Construction.

### A.    Plaintiff's Near Exclusive Reliance on Dictionaries Without Reference to the Intrinsic Evidence is Contrary to Law.

Plaintiff's opening brief employs a claim construction methodology that the Federal Circuit has squarely rejected.  Again and again, Plaintiff cites a broad dictionary definition of a

claim term, concludes that the specification contains no express disavowal of that definition, and then asserts that the broad dictionary definition is the correct construction. But the Federal Circuit emphatically rejected this approach in its *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005), explaining that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the claim term in the abstract, out of its particular context, which is the specification." Instead of focusing on dictionary definitions divorced from the patent, *Phillips* says to focus on the specification, which

> is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.

*Id.* at 1315. In addition to the specification, "a court should also consider the patent's prosecution history" because the prosecution history can "inform the meaning of the claim language by demonstrating how the inventor understood the invention." *Phillips* at 1317 (citation and quotation marks omitted).

To the extent that dictionaries are used in claim construction, the focus must be on finding a dictionary definition that is in accord with the specification and the rest of the intrinsic evidence. As the Federal Circuit explained in *Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1348 (Fed. Cir. 2005), the "*en banc* decision in *Phillips* clarified the appropriate use of dictionaries in claim construction, rejecting the view that dictionary definitions govern unless contradicted by intrinsic evidence." If dictionaries are used:

> [t]he court must ensure that any reliance on dictionaries accords with the intrinsic evidence: the claims themselves, the specification, and the prosecution history. Under *Phillips*, the rule that 'a court will give a claim term the full range of its ordinary meaning,' does not mean that the term will presumptively receive its broadest dictionary definition or the aggregate of multiple dictionary definitions. Rather, in those circumstances where reference to dictionaries is appropriate, the task is to scrutinize the intrinsic evidence in order to determine the most appropriate definition.

*Id.* at 1348-49 (citations omitted).

Instead of consulting the intrinsic record to determine whether the dictionary definitions were appropriate, Plaintiff has selectively sought out dictionary definitions in the hopes of stretching the claims to fit its infringement theories, without regard to the true meaning of the terms in the context of the instrinsic record. Plaintiff has examined the instrinsic record only for "intentional disclaimers" or "expressions of manifest exclusion" of the dictionary definitions it hoped to selectively apply. As Plaintiff puts it:

> because neither the specification nor file history includes "an intentional disclaimer, or disavowal, of claim scope by the inventor," *Phillips*, 415 F.3d at 1316, "using words or expressions of manifest exclusion or restriction," *Innova*, 381 F.3d at 1115, there is no basis to deviate from the ordinary meaning of the phrase.

(Pl.Br.7.) This same argument, with the same supporting citations, is repeated nearly *verbatim* throughout Plaintiff's opening brief (at pages 3, 7, 13, 16, and 26). But Bid For Position's argument misstates the law.

The *Phillips* decision explicitly rejected an approach where "recourse to the specification is limited to determining whether the specification excludes one of the meanings derived from the dictionary." *Phillips*, 415 F.3d at 1320. Instead, the Federal Circuit explained that the specification "is always highly relevant to the claim construction analysis" and "usually" is "dispositive." *Id*. at 1315. Careful reading of the specification will enable courts "to fully appreciate how the specification *implicitly limits*" the "definition" of a claim term. *Id*. at 1321 (emphasis added). Therefore, *Phillips* hardly stands for the proposition – as Plaintiff asserts – that the specification can only limit the ordinary meaning of a claim term where it contains an intentional disclaimer, or disavowal, of claim scope.

In fact, in its claim construction opinions after *Phillips*, the Federal Circuit has placed heavy weight on how the words employed in a claim were used in the specification. For example, in *Nystrom v. Trex Co.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005), the Federal Circuit affirmed this Court's construction of "board" to mean a "piece of elongated construction material made from wood cut from a log." In *Nystrom*, the claims did "not include any language describing the 'board' as cut from a log or necessarily being made of wood." *Id*. at 1143.

However, the "written description and prosecution history consistently use the term 'board' to refer to wood decking materials cut from a log." *Id* at 1145. And that fact was decisive:

> What *Phillips* now counsels is that in the absence of something in the written description and/or prosecution history to provide explicit or implicit notice to the public – i.e., those of ordinary skill in the art – that the inventor intended a disputed term to cover more than the ordinary and customary meaning revealed by the context of the intrinsic record, it is improper to read the term to encompass a broader definition simply because it may be found in a dictionary, treatise, or other extrinsic source.

*Id*. at 1145.

Plaintiff also mischaracterizes *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111 (Fed. Cir. 2004). Plaintiff's quoted language from *Innova* simply addresses when it is appropriate to depart from the ordinary meaning, rather than, as *Phillips* requires and Defendants advocate, using the intrinsic evidence to determine that ordinary meaning. *Innova* in no way supports Plaintiff's assertion that one should only look to the specification and file history to determine the ordinary meaning if there are "words or expressions of manifest exclusion or restriction." In any event, *Phillips* and its progeny make clear that is not the law. *Phillips* states that "the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips*, at 415 F.3d at 1321. Thus, in evaluating how a claim term is used in the specification or file history, at least under current law, one is hardly limited to intentional disclaimers or disavowals.

### B. Construction of Disputed Claim Terms Is Required where the Parties Dispute the Scope of the Disputed Claim Term.

Compounding its legal error on the appropriate use of dictionaries, Bid For Position repeatedly contends that no construction of disputed claim terms is even necessary. But as the Federal Circuit explained in *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." In this case, for each disputed claim term, there is a dispute regarding its scope. Construction of all of the disputed terms is therefore necessary in order to resolve these disputes.

II.  **"Information For Selecting One of the Two or More Positions of Priority That the First Bidder Wishes to Maintain in the Auction" (Claim 1[a]):**

**"Selected One of the Two or More Positions of Priority That the First Bidder Wishes to Maintain in the Auction" (Claim 11[a])**

| Defendants' Construction | Bid For Position's Construction |
|---|---|
| Information entered by the bidder that indicates the bidder's express choice of one of the two or more positions of priority in the auction. | No construction necessary (except to the extent the terms contained in this phrase are separately construed elsewhere). |

There are two fundamental disputes regarding the scope of this claim term that should now be resolved by the Court. The parties disagree about *what* is selected and *who* does the selecting. Defendants maintain that this claim limitation requires that a bidder make a choice of a specific position *from one of at least two or more positions of priority*, and that *the bidder* make that choice expressly. Bid For Position disagrees. Although it argues no construction is required and refuses to offer a construction of the disputed claim terms, Plaintiff argues that a bidder's selected position of priority "could be inferred from the data provided by the bidder; or the bidder could choose a range of acceptable positions (i.e., the highest position it can attain)." (Pl.Br.8.) The Court should now resolve these disputes.

A.  **The Bidder Must Choose His Desired Position From At Least Two or More Positions of Priority Available in the Auction.**

In both claim 1 and claim 11, the claim language itself requires that the bidder select "one of the two or more positions of priority." In claim 1, the system receives "bid management data from a first bidder" and the "received bid management data" includes "information for selecting *one of the two or more positions of priority* that the first bidder wishes to maintain in the auction." (Ex. 1, 14:6-13, emphasis added.) In claim 11, "the received bid management data" includes "selected *one of the two or more positions of priority* that the first bidder wishes to maintain in the auction." (Ex. 1, 15:11-14, emphasis added.) In both claims, these limitations require that the bidder first be offered a selection of one of two or more positions of priority, and then make an express selection of one of two or more posititions of priority.

Although it offers no construction of the disputed claim language, Bid For Position concedes that this claim language covers the situation where a "specific position" is "selected by the bidder." (Pl.Br.8.) However, Plaintiff argues that the claim language also covers two further scenarios: "the position could be inferred from the data provided by the bidder; or the bidder could choose a range of acceptable positions (i.e., the highest position it can attain)." *Id*. But the claim language, when properly construed, covers neither scenario.

To start with, one cannot reasonably interpret the claim language as encompassing a system that infers a desired position for a bidder, because the claim language requires information for "selecting" a position, not information for "inferring" a position. Moreover, a claim term must be understood in "its particular context, which is the specification." *Phillips*, 415 F.3d at 1321. That context is helpful on this point, because the specification never so much as hints at "inferring" a desired position for a bidder. To the contrary, in the specification, whenever the selection is made of a desired position from among two or more positions, the selection is always made expressly by the bidder. For example, in the Internet search example, the specification explains:

> Another example *allows the bidder to choose a position, such as fourth in the results listing*. If the system finds that the bidder has achieved the proper position in the search engine with respect to the current term being processed, the system may reduce the bid to a minimum which allows the bidder to keep the position, step 210. Otherwise, the system increases the bid without exceeding the maximum bid entered by the bidder, step 212. (Ex. 1, 4:55-62, emphasis added.)

In addition to arguing that the claim language covers "inferred" positions, Plaintiff also suggests that it encompasses the situation where a bidder chooses "a range of acceptable positions (i.e., the highest position it can attain)." (Pl.Br.8.) But this suggestion is wrong because it conflicts with the very language of the claims. The claim language requires a selection of "*one* of the two or more positions of priority" that the "bidder *wishes to maintain* in the auction." (Ex. 1, 14: 10-12, emphasis added) Neither a "range of acceptable positions" nor

"the highest position it can attain" involves the selection of one position (out of two or more available choices) that the bidder wishes to maintain in the auction.[1]

### B. During Prosecution, the Applicant Made Remarks Which Make Clear That the Claim Language Does Not Cover the Two Scenarios That Plaintiff Now Says Are Covered.

Plaintiff's opening brief ignores the prosecution history, other than to assert repeatedly (and without explanation) that it contains no "express disavowal." (Pl.Br. 3, 7, 16, & 26.) But, in truth, inventor Konia "limited the invention in the course of prosecution." *Phillips*, 415 F.3d at 1317. The Court should consider this prosecution history in construing the patent claims, because "like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent." *Id.*

The originally-filed claims did not contain the claim language that is at issue here: "information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction" and "selected one of the two or more positions of priority that the first bidder wishes to maintain in the auction." The applicant added these limitations in an attempt to distinguish his invention from the prior art. In one amendment, Konia amended the claims to require that "the received bid management information" include "a selected position of priority." (Ex. 2, February 4, 2004 Amendment at 4, P625.) After the Examiner again rejected the claims, the applicant further specified that the selected position of priority be one that the "bidder wishes to maintain in the auction." (Ex. 2, July 21, 2004 Amendment at 4, P681.)

This amendment was accompanied by crucial remarks of the applicant – remarks that are dispositive of the present dispute. The remarks began by referring to "an April 7, 2004 telephone conference" with the Examiner. (Ex. 2, July 21, 2004 Amendment at 9, P686.) During the

---

[1] Plaintiff's decision to refer to itself in its brief as "Bid For" rather than "Bid For Position" is telling. During his deposition, inventor Konia repeatedly testified that the innovation of the patent was that it allowed a bidder to "specify" a desired position. (Ex. 3 at 239:23-25; 12:20-24; 15:24-17:2; 119:4-18, 257:14-25; 261:3-9.) Even more importantly, the issued claims, coupled with the intrinsic evidence, make clear that a crucial aspect of Konia's invention was the ability of a bidder to choose – and then bid for – the second position, the third position, etc. Plaintiff is therefore retreating both from its issued claims and its very own name.

telephone conference, "the Examiner stated that the art does not teach a system or method that checks whether a bidder's bid was too high for *a specific position of priority or ranking that a bidder wishes to maintain in an auction*." (*Id*., emphasis added.) According to the remarks, the Examiner "agreed that if this point was clarified in the claims, the claims would be allowable." (*Id*.) The applicant then maintained that his latest amendment of the claims – specifying that the selected position of priority be one "that the bidder wishes to maintain in the auction" – provided the necessary clarification: "The Applicant has amended independent claims 1 and 11 as discussed with the Examiner in the April 7, 2004 telephone conference." (*Id*.) In other words, the newly added claim language made clear that the invention required the selection of "a *specific position* of priority or ranking that a bidder wishes to maintain in an auction." (*Id*., emphasis added.)

By making these remarks (and others, see pages 13-14 *infra*), the applicant relinquished a scenario where the auction system could infer a position that the bidder desires. After all, he told the Examiner, in effect, that the amended claims required the selection of "a specific position…that a bidder wishes to maintain" – not an inferred position. And by making these remarks, inventor Konia relinquished a scenario where the bidder seeks "the highest position it can attain" (Pl.Br.8), because a bidder that wants to do the best he can has not selected "a specific position of priority or ranking" that he "wishes to maintain in an auction." (Ex. 2, July 21, 2004 Amendment at 9, P686.) Thus, the prosecution history makes clear that it was not the Defendants that decided "to limit the claim to just one possible way the position is selected – through the express choice of the bidder," as Bid For Position argues. (Pl.Br.8.) Instead, this limitation was agreed to by the applicant as part of his bargain with the Examiner to secure the '151 patent. Defendants simply ask the Court to hold plaintiff to the bargain. *See Nystrom v. Trex Co.*, 2002 U.S. Dist. LEXIS 27501 at *14 (E.D. Va. July 1, 2002) (patentee's amendments to avoid prior art during prosecution "serve to further limit the scope of the term").

## C. The Specification Text on Which Plaintiff Relies Describes an Unclaimed Embodiment of Konia's Invention, and Is Therefore Irrelevant to the Scope of the Claimed Invention.

In its effort to demonstrate that the specification supports a construction that extends beyond the bidder entering a specific selection of his position, Bid for Position points to the following language in the specification:

> The system checks for whether the bidder's desired position is met for the particular web page and term, step 208. For example, the system checks for whether the bidder's bid exceeds all other bids in the auction for determining continuing priority for listing the bidder's web page. Another example allows the bidder to choose a position, such as fourth in the result listing.

(Pl.Br.9-10, quoting Ex. 1, 4:50-56). According to Plaintiff, this text "supports the broader definition" of the disputed claim term "that includes both express and implied selections." (Pl.Br.9.) This paragraph makes no mention of implied selections. Plaintiff apparently believes the support for "implied selections" is itself somehow implied in the specification.

Even assuming arguendo that this small section of the specification could be read to support "implied selections," this example was abandoned during prosecution when the claims were narrowed by amendment to attempt to avoid the prior art of record. (*See* Def.Op.Br.5-6.) The amended claims require that the bidder actually selects "*one* of the *two or more* positions of priority." Regardless of how broadly "selecting" is interpreted, surely it cannot be interpreted include *not* selecting. The claims require that the bidder choose a position, as described in the last sentence of the cited paragraph. *See LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1378 (Fed. Cir. 2006) ("statements in the specification referring" to unclaimed embodiments "are not relevant to the invention ultimately claimed").

## D. The Specification Makes it Clear That The Bidder *Enters* The Selection of The Position He Wishes To Maintain.

Bid for Position acknowledges that the "information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction" will "come from the bidder." (Pl.Br.6.) Plaintiff then argues that although the information comes "from the bidder," it is not necessarily "entered by the bidder." (*Id.* at 7.) But Plaintiff never explains how something can come from the the bidder without being entered by the bidder, and neither does

the specification.  To the contrary, in the specification, whenever a position of priority is selected from the two or more positions of priority in the auction, the selection is always entered by the bidder.  The specification explains, for example, that "[t]he online bid management system 102 will increment the lower bids until they reach *desired bidding positions entered by the bidders*." (Ex. 1, 3:40-44, emphasis added; s*ee also id.* at 4:55-56 (the "example allows the bidder to *choose a position*, such as fourth in the results listing") and 5:58-60 (the "online bid management system 102 increments the lower bids until they reach desired bidding positions *entered by the bidder*"), emphasis added.)   Defendants ask that the court adopt the natural interpretation of the claim language, supported by the intrinsic record, that the "information for selecting … the position[s] of priority" comes from the bidder, and is therefore entered by the bidder.

### III.   "Selected Position of Priority" (Claim 1[b, d, e, f], 11[b, d, e], 23, 24)

| Defendants' Construction | Bid For Position's Construction |
|---|---|
| The specific position expressly chosen by the bidder. | Alternative 1: no construction necessary<br>Alternative 2: "the position of priority selected from the bid management data received from the first bidder."<br>Alternative 3: "selected" means "chosen based on fitness or preference."  No construction is necessary for "position of priority." |

The next claim term, "selected position of priority," involves a similar dispute:  who picks the position of priority?  In Defendants' view, it must be the bidder.  Despite offering two different "alternative" constructions, Plaintiff again maintains that "no construction is necessary" because "the 'selected' position of priority refers back to step [a] of Claim 1."  (Pl.Br.10-11.) Defendants agree that this claim limitation refers back to step [a] of claim 1, but a construction by the Court is necessary because the parties disagree about the scope of both limitations.

The disagreement can be simply stated.  In Bid For Position's view, "the bidder need not expressly select a position but, rather, need only provide data 'for selecting' a position." (Pl.Br.12)  In Defendants' view, the "selected position of priority" is a position (second, third, etc) selected by the bidder.  Thus, there is a dispute about claim scope that requires resolution by the court.  *See O2 Micro*, 521 F.3d at 1362.

## A. Plaintiff's Alternative Proposed Constructions Conflict With the Specification and the Prosecution History.

According to Bid For Position, if a construction is necessary, the Court should choose from among two alternatives: Alternative 2 and Alternative 3. Plaintiff's Alternative 2 is to construe "selected position of priority" to mean "the position of priority selected from the bid management data received from the first bidder." As its Alternative 3, Plaintiff proposes that the Court construe the term "selected" only. According to Plaintiff, "selected" should be defined to mean "chosen based on fitness or preference."

Plaintiff's Alternative 2 ("selected position of priority" means "the position of priority selected from the bid management data received from the first bidder") can be rejected because the specification discloses no such thing. Instead, as explained above, the specification discloses that the bidder selects a specific position of priority and enters his selected position as part of his bid management data. There is no suggestion or hint, anywhere in the specification, that a selected position of priority can be (as Plaintiff's proposed construction puts it) "selected *from*" the bid management data, rather than "selected *by*" the bidder and included in the bid management data. Plaintiff's play on words cannot expand the scope of the claims.

Plaintiff's Alternative 2 also conflicts with the remarks that the applicant made during prosecution (discussed above), where he made clear that the invention required the selection of "a specific position of priority or ranking that a bidder wishes to maintain in an auction." (Ex. 2, July 21, 2004 Amendment at 9, P686.) The applicant said that he was amending the claims to require the selection of "a specific position of priority" by the bidder – not the submission of data that would permit someone or something else to select a position for him.

Plaintiff's Alternative 3 ("selected" should be defined to mean "chosen based on fitness or preference") is similarly divorced from the specification and the prosecution history. *Plaintiff points to no suggestion, anywhere in the specification, that a desired position could somehow be ascertained based upon a position's "fitness" for a particular bidder, separate and apart from an express selection of the desired position by that bidder.* To the contrary, the specification explains that "[t]he online bid management system 102 will increment the lower bids until they

reach *desired bidding positions entered by the bidders.*"  (Ex. 1, 3:40-43, emphasis added.)

Plaintiff's definition of "selected" ("chosen based on fitness or preference"), while perhaps

useful for Plaintiff's purposes in this lawsuit, lacks support in the patent.  *Phillips*, 415 F.3d at

1321.  A more appropriate definition of "selected" could be derived from the definition of

"select" in *Webster's Dictionary*, cited by Plaintiff on page 8 of its opening brief.  It defines

"select" to mean "to make a choice."  (Pl.Br.8, *quoting* Pl. Ex. 2.)

## B.     Plaintiff's Alternative Proposed Constructions Conflict With the Context of the Disputed Claim Language.

Although Plaintiff prefers to construe single claim terms out of context, the Federal

Circuit has observed that "the context in which a term is used in the asserted claim can be highly

instructive."  *Phillips*, 415 F.3d at 1314.  Here, claim 1 initially describes how "the received bid

management data" includes "information for selecting one of the two or more positions of

priority that the first bidder wishes to maintain in the auction."  (Ex. 1, 14:9-12.)  The very next

limitation then recites:  "checking for if a second bidder holds *the* selected position of priority."

(Ex. 1, 14:13-14.)  The use of "the" instead of "a" as a modifier for "selected position of

priority" is important, because of a longstanding patent law convention involving the use of

indefinite and definite articles.  The convention is described in the *Manual of Patent Examining*

*Procedure*:

> A claim is indefinite when it contains words or phrases whose meaning is unclear.
> The lack of clarity could arise where a claim refers to "said lever" or "the lever,"
> where the claim contains no earlier recitation or limitation of a lever and where it
> would be unclear as to what element the limitation was making reference.

*Manual of Patent Examining Procedure*, §2173.05(e) (8th ed. 2007.)  The reference, then, to

"checking for if a second bidder holds *the* selected position of priority" means that the position

of priority has been selected in an earlier step of the method claim.  The only conceivable place

where the selection can have occurred is in connection with the "information for selecting one of

the two or more positions of priority."  In other words, this "information" includes the bidder's

"selected position of priority."  *See Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350,

1356 (Fed. Cir. 1999) ("It is clear from the language of the claim itself that the term "a discharge rate" in clause [b] is referring to the same rate as the term 'the discharge rate' in clause [d]").

C.    **Defendants' Use of the Word "Specific" in Their Proposed Claim Construction (the _Specific_ Position Chosen By the Bidder) Is Supported By the Intrinsic Evidence.**

Defendants urge that "selected position of priority" be construed to mean "the specific position expressly chosen by the bidder."  Plaintiff criticizes Defendants' proposed construction on the grounds that the "modifier 'specific' is not found in the claims."  (Pl.Br.12.)  But the modifier "specific" is found in the prosecution history – indeed, it was used by the inventor to explain what he meant by the "selected position of priority" claim language.

The original claims did not include the phrase "selected position of priority."  This phrase was first added in a February 4, 2004 amendment (a different amendment than the July 21, 2004 amendment discussed above).  In the "remarks" that accompanied the February 4, 2004 amendment, the applicant argued that the prior art "fails to disclose a system or method which checks for whether a bidder's bid is too high for a _specific position_ of priority or ranking that a bidder wishes to maintain in an auction."  (Ex. 2 at 10, P630, emphasis added; _see also id_. at 13-14, P633-34 (the prior art "fails to disclose a system or method which checks for whether a bidder's bid is too high for a _specific position_ of priority or ranking that a bidder wishes to maintain in an auction"), emphasis added.)  The added language – "selected position of priority" – was intended to make clear that the claims now had an element (i.e., checking for a "specific position" of priority that the bidder wishes to maintain in the auction) that the applicant believed was missing from the prior art of record.  This "specific position" language that the inventor used during prosecution to describe this limitation is what Defendants have now employed in their proposed construction.

The inventor's statements in the prosecution history reveals what the inventor meant by "selected position of priority" – it was the "_specific position_ of priority or ranking that a bidder wishes to maintain."  (Ex. 2 at 10, 13, P630, P633, emphasis added.)  Plaintiff conveniently suggests now that an auction that permits a bidder to select "the highest position available"

enables that bidder to choose a "selected position of priority." (Pl.Br.12.)  However, "[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."  *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1996).

## IV. "Checking For Whether a First Bid From the First Bidder Exceeds a Second Bid From the Second Bidder" (Claim 1[c], 11[c])

| Defendants' Construction | Bid For Position's Construction |
| --- | --- |
| Determining whether the bid entered by the first bidder is larger than the bid entered by the second bidder. | Alternative 1: "checking" means "verifying, comparing, inspecting, or ascertaining;" the rest of the phrase requires no construction.<br>Alternative 2: "checking" means "verifying, comparing, inspecting, or ascertaining"; "exceeds" means "greater than"; and the rest of the phrase requires no construction. |

The parties have two disagreements regarding the scope of this claim limitation.  The first issue is whether the claim language requires a determination about whether the first bid is larger than the second bid.  Defendants say that such a determination is absolutely required.  Plaintiff maintains that it is sufficient to "check" the first bid and "check" the second bid by conducting some sort of "inquiry or investigation," but that no determination about which bid is larger need be made.  (Pl.Br.15.)  The second issue is whether the "first bid from the first bidder" is "entered by" the first bidder.  Defendants say that, given the intrinsic evidence, the bid from the first bidder must be "entered by" him.  Plaintiff maintains that this is not necessarily so.  Consistent with *O2 Micro*, the Court should now resolve these disputes.

### A. The Context of the Disputed Claim Language Makes Clear That the "Checking" Step Requires a Determination as to Which Bid Is Larger.

Bid For Position criticizes Defendants' proposed construction because it implicitly interprets "checking" to mean "determining."  According to Plaintiff, "checking" does not mean "determining" because the "ordinary meaning of 'checking' is not 'determining.'"  (Pl.Br.15.)  Bid For Position consults dictionaries to establish the ordinary meaning of this term, but that is

the wrong place to look.  "[T]he 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent."  *Phillips*, 415 F.3d at 1321.

The context is important.  *Phillips*, 415 F.3d at 1314.  In claim 1, the disputed claim language itself reads:  "checking for whether a first bid from the first bidder exceeds a second bid from the second bidder."  (Ex. 1, 14:15-16.)  A determination obviously must be made about whether the first bid "exceeds" the second bid – that is the stated purpose of the "checking" step. The rest of the claim reinforces this conclusion.  For example, the claim goes on to recite an incrementing step that raises the bidder's bid "if the first bid does not exceed the second bid." (Ex. 1, 14:28-29.)  For the system to know whether to raise the bid or not, a determination must be made in the checking step as to whether the first bid exceeds the second bid.[2]

**B.      Plaintiff's Own Dictionaries Show That Defendants' Proposed Construction Employs a Standard Definition of "Checking."**

Plaintiff cites this definition of "check" in *Webster's Dictionary*:  "verify, often used with or against."  (Pl.Br.14, citing Pl. Ex. 2 at 381.)  Verifying whether "a first bid from the first bidder exceeds a second bid from the second bidder" necessarily involves determining which bid is larger.[3]  Plaintiff cites a second definition of "check" in the same dictionary: "to inspect and ascertain the condition of."  *Id.*   Again, acertaining whether "a first bid from the first bidder exceeds a second bid from the second bidder" requires determining which bid is larger.[4] Defendants' proposed construction is therefore based on both standard definitions of "checking" advanced by Plaintiff, and it is the definition that makes sense in the context of the intrinsic evidence.

---

[2]   Even inventor Konia had no difficulty understanding this claim language in its context. When asked about it at his deposition, he said that it involved "two bidders for a particular key phrase and checking to see if one has a higher bid than the other."  (Ex. 3, 264:3-5.)

[3] Indeed, *Webster's Dictionary* defines "verify" to mean "to prove to be true: establish the truth of: conclusively demonstrate by presentation of facts or by sound reasoning and argument." (Ex. 10.)

[4] Here too, *Webster's Dictionary* defines "ascertain" to mean "to find out or learn for a certainty (as by examination or investigation): make sure of: discovery."  (Ex. 10.)

Although Plaintiff disputes the use of the word "determining" in Defendants' proposed construction, Plaintiff's proposal is that the Court construe "checking" to mean "verifying, comparing, inspecting, or ascertaining." (Pl.Br.14.) In the spirit of compromise, Defendants are willing to substitute "ascertaining" for "determining" in their proposed construction. As modified, Defendants' construction would then read: "ascertaining whether the bid entered by the first bidder is larger than the bid entered by the second bidder."

C.    **Defendants' Use of "Entered By the Bidder" in Their Proposed Construction Is Fully Consistent With the Intrinsic Evidence.**

The disputed claim term reads "checking for whether a first bid *from the first bidder* exceeds a second bid from the second bidder." (Ex. 1, 14:15-16.) Plaintiff proposes no construction of the "from the first bidder" portion of the phrase. However, as explained above, the specification describes only one way for a bidder to make a bid: the bid is "entered by" the bidder. (*See* pages 9-10, *supra*.) Defendants' proposed construction therefore employs the "entered by" language.

Plaintiff complains that "Defendants' construction 'entered by the bidder' is inconsistent with the actual claim language." (Pl.Br.18.) Bid For Position goes on to explain:

> When the claimed system automatically increments or decreases the bid, though the bid is still "from" the first bidder (*i.e.*, the bid is made on behalf of the first bidder), that bid is not "entered by" the first bidder – that is, the bid is not directly entered by the bidder. Rather, the bid is automatically used by the system without the bidder having to enter the bid.

(Pl.Br.18.) But Plaintiff is simply wrong. The bid which is incremented or decremented *is* the bid "entered by" the first bidder.

Claim 1 is illustrative. It is a method claim. Where "most of the steps" of a "method claim refer to the completed results of the prior step," the steps must be "performed in order." *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007). In the sequence of steps recited in claim 1, the first bidder starts by submitting a bid, along with bid management data which includes "information for selecting one of the two or more positions of priority." (Ex. 1, 14:9-11.) The system

then compares the bid of the first bidder with the bid of a second bidder, and automatically increases or decreases the first bidder's bid as needed to maintain his selected position of priority. Thus, the bid that is increased or decreased is the bid that the first bidder entered in the earlier step of the claim.

### D. Defendants' Construction Does Not Exclude a Preferred Embodiment.

Plaintiff complains that Defendants' construction "excludes a preferred embodiment" that is "depicted on Figure 2," which is reproduced below. (Pl.Br.18.)



Plaintiff points to step 216 in Figure 2. After a bid is increased or decreased (steps 212 or 210) and after a "re-check" of the bidder's position (step 214), step 216 provides another checking step of the increased or decreased bid to determine if the desired position has been achieved. This additional check is done in order to provide notification to the bidder if he failed to achieve his selected position (steps 218 & 220).

It is true that, as Plaintiff claims, the increased or decreased bid that is examined in step 216 "was not entered by the bidder." (Pl.Br.19.) But that makes no difference, because the "check" in step 216 is not the "check" that is claimed in claim 1 and claim 11 and shown in Figure 2 as steps 208, 210 and 212. Instead, the step 216 "check" is performed after the claimed "checking" step (so as to notify unsuccessful bidders). Defendants' construction does not exclude the embodiment that is shown in Figure 2, because step 216 is a later operation which is not recited in the claim. *See Novo Nordisk of North America, Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1369-70 (Fed. Cir. 1996) ("While claims are to be interpreted in light of the specification, all that appears in the specification is not necessarily within the scope of the claims and thus entitled to protection").

### E. In the Context of this Claim Language, "Exceeds" Means "Larger Than."

According to Bid For Position, the claim term "exceeds" means "greater than," not "larger than," because "the term 'larger' connotes size." Although Plaintiff concedes that "something that 'exceeds' may also be 'larger than,' this is not always the case." (Pl.Br.17.) Plaintiff gives the example of "a car that exceeds the speed limit" but "is not larger than the speed limit." (*Id.*)

However, this invention does not involve speeding cars. It involves bids in an auction. In the context of comparing bids, Bid A exceeds Bid B if Bid A is larger than Bid B. "Larger than" is therefore an appropriate construction for "exceeds" in "the context of the particular claim in which the disputed term appears," as well as "the context of the entire patent, including

the specification."[5] *Phillips*, 415 F.3d at 1313.  *See* Def.Op.Br.18-19 (reviewing support for Defendants' construction in the specification).

### F.    "A Bid" Versus "the Bid" Is a Non-Issue.

Bid For Position also complains that Defendants' proposed construction uses "the bid," whereas "a bid" (in Plaintiff's view) is preferable.  This is a distinction without a difference.  Defendants are therefore willing to substitute "a bid" for "the bid" in their proposed construction.  As further modified, Defendants' proposed construction would read:  "ascertaining whether a bid entered by the first bidder is larger than a bid entered by the second bidder."

### V.    "Wherein the Relative Position of Priority for Providing the Service for the First Bidder is Dependent on Whether the Value of the First Bid Exceeds the Value of the Second Bid" (and Analogous Limitation Where "First" and "Second" are Interchanged) (Claim 1[c], 11[b])

| Defendants' Construction | Bid For Position's Construction |
|---|---|
| where the bidder that bids the higher amount always gets priority over the bidder that bids the lower amount | No construction necessary.<br><br>Alternative construction: "value" means "relative worth, utility, or importance." |

The fundamental dispute here is whether the "value" of the bid is the bid amount, as Defendants assert.  Plaintiff, while agreeing that a bid is "an offer of a price" (Pl. Br. 1), argues that the "value" of the bid has some other, qualitative component (so that, for example, a $2 bid can have a greater "value" than a $5 bid).  Consistent with *O2 Micro*, the Court should now resolve this dispute about claim scope.

### A.    Intrinsic Evidence Shows That the "Value" of a Bid Is the Bid Amount.

The claim language itself shows that the "value" of a bid is the bid amount.  After reciting the limitation at issue here, claim 1 goes on to describe an incrementing step, where the first bidder's bid is increased, if necessary, to maintain his selected position of priority:

---

[5] Defendants' construction is also consistent with Plaintiff's dictionary definition of "large" as "of greater than average size, extent, quantity, or *amount*."  (Pl. Ex. 3 at 987, emphasis added.)

according to the bid management data received from the first bidder,
automatically *incrementing the first bid* to a value exceeding the second bid *if the
first bid does not exceed the second bid*, to thereby maintain the selected position
of priority for providing the service for the first bidder.

(Ex. 1, 14:26-31, emphasis added.)  The "incrementing" step is only triggered "if the first bid

does not exceed the second bid."  This trigger turns on a comparison of the first bid amount with

the second bid amount.  The very language of this limitation equates "value" with bid amount,

and leaves open no other interpretation.

The specification also demonstrates that the "value" of a bid is the bid amount.  The

"Summary of the Invention" broadly characterizes the invention as involving a "method and

system for automatically managing an auction for determining relative priority for a service in a

system wherein priority is based on the relative value of related bids."  (Ex. 1, 1:33-36.)  In the

very next sentence, the patentee explains that "[t]he method comprises *checking for whether a*

*first bid exceeds a second bid* in an auction for determining continuing priority for providing an

ongoing service."  (*Id.* at 1:36-39, emphasis added.)  A first bid exceeds a second bid when the

first bid amount is higher than the second bid amount.  Because these statements appear in the

"Summary of the Invention" section of the patent, they "are not limited to describing a preferred

embodiment, but more broadly describe the overall inventions."  *Microsoft Corp. v. Multi-Tech*

*Sys.*, 357 F.3d 1340, 1348 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 821 (2004).

The remainder of the specification is in accord.  For example, the specification goes on to

state that "[t]he relative priorities for providing the service for bidders for their bids received

from the bidder terminals 175 are dependent on *whether their bids exceed the value of other*

*bids*," thus directly equating bid amount with bid value.  (Ex. 1 at 3:29-32.)  The specification

similarly explains that "[t]he online bid management system 102 will increment the lower bids

until they reach desired bidding positions entered by the bidders as long as the bids do not

exceed maximum values entered by the respective bidders."  (*Id.* at 3:40-44.)  Again, this

portion of the specification treats bid amount and bid value as the same.

None of the examples in the specification awards priority to a bidder whose bid amount is

less than a second bidder's bid amount.  To the contrary, in each example, the bidder with the

higher bid amount wins priority over another bidder with a lower bid amount. Indeed, in the very first example (which involves priority for search results listings in an Internet search), the specification explains that "the web pages of bidders that bid higher than other bidders having web pages bidding for the same term are ranked higher on the search results." (Ex. 1, 3:62-64.) Nothing in the specification even hints at the idea that priority can be awarded based upon some unstated "relative worth, utility, or importance," as Plaintiff's construction of "value" allows.

Finally, the prosecution history also shows that the "value" of a bid is the bid amount. At one point during prosecution, the applicant described "incrementing the first bid *to a value exceeding the second bid* if *the first bid does not exceed the second bid*, thereby causing the relative priority for providing service for the first bidder to exceed the priority for providing service for the second bidder." (Ex. 2, December 12, 2002 Amendment at 10, P476, emphasis added.) This is additional intrinsic evidence equating bid value with bid amount.

### B. To the Extent a Dictionary Definition of "Value" Is Used, the Correct Definition in the Context of This Patent Is "Amount."

As the Federal Circuit explained in *Free Motion Fitness,* "in those circumstances where reference to dictionaries is appropriate, the task is to scrutinize the intrinsic evidence in order to determine the most appropriate definition." 423 F.3d at 1348-49. Here, the *American Heritage Dictionary*, which Plaintiff heavily relies on, provides as its first of several definitions of "value": "an *amount*, as of goods, services, or money, considered to be a fair and suitable equivalent for something else." (Pl. Ex. 3, emphasis added.) *Webster's Dictionary*, which Plaintiff also relies on, contains this definition: "the *amount* of a commodity, service, or medium of exchange that is the equivalent to something else: a fair return in goods, services, or money." (Pl. Ex. 2, emphasis added.) Both definitions are fully consistent with the intrinsic evidence which shows that the Court should define "value" to mean "amount," and not Plaintiff's suggested "relative worth, utility, or importance" definition that has no support in the intrinsic evidence.

## C.  Defendants' Construction Hardly Leads to "Odd Results."

Bid For Position complains that equating "value" to "amount" would "lead to odd results." (Pl.Br.23.)  As Plaintiff explains:

> Not all advertisers bid in dollars.  If value were construed to mean amount, then a [sic, an] advertiser who bid 25 pesos would obtain a higher position of priority than an advertiser that bid 20 cents because 25 is a higher amount than 20 – even though 20 cents is worth more than 25 pesos.

(Pl.Br.23-24.)  Plaintiff's argument seems to be premised on the false notion that comparing amounts of bids somehow precludes normalizing the bids to a common currency to permit comparison as one of ordinary skill in the art would obviously know to do.  In Plaintiff's example, the 25 peso bid is 25 pesos, not just "25," the 20 cent bid is 20 cents, not "20." Therefore, the relevant comparison is 25 pesos to 20 cents, not 25 to 20.  If one properly compares amount, 20 cents is a larger amount than 25 pesos.  In any event, this example is not found in the patent.

Bid For Position's proposed construction is what leads to odd results.  Under Bid For Position's construction, a bid of $1 could have a higher value than a bid of $4 where the $1 bid had a higher "worth" or "utility" using some unspecified metric.  Although Plaintiff's proposed construction seems plucked from thin air, Plaintiff recognizes its infringement claims fail if it follows the intrinsic record and properly construes value as amount.  Unfortunately for Plaintiff, its proposed construction of the claims differs from the purported invention of the patent-in-suit.

## D.  "Dependent On" Means "Always Gets Priority."

As explained above, the intrinsic evidence shows that in Konia's invention, the bidder with the higher bid amount always wins priority.  Therefore, in the context of this claim limitation ("wherein the relative position of priority for providing the service for the first bidder is *dependent on* whether the value of the first bid exceeds the value of the second bid"), the phrase "dependent on" means "always gets priority."  Given the intrinsic evidence, the most appropriate dictionary definition of "dependent" is provided in *Webster's Third International*

*Dictionary*, on which Plaintiff repeatedly relies. The definition reads: "determined or conditioned by something else; contingent."[6]

Bid For Position argues that Defendants are reworking the claims to add the modifier "always," because that modifier is not found in the claim language. (Pl.Br.24.) But Bid For Position asks the Court to construe this claim limitation to mean "*sometimes* dependent on," and "sometimes" does not appear in the claim language either. In any event, "in clarifying the meaning of claim terms, courts are free to use words that do not appear in the claim so long as the resulting claim interpretation accords with the words chosen by the patentee to stake out the boundary of the claimed property." *Pulse Tech., LLC v. TIVO*, 419 F.3d 1326, 1333 (Fed. Cir. 2005) (quotation marks, citation, and ellipses omitted). Here, the so-called "modifier" of "always" is properly used to clarify the meaning of the disputed phrase and resolve the parties' dispute about the scope of this claim limitation.

###### E. Defendants Are Willing to Modify Their Proposed Construction to Accommodate Plaintiff's Concerns About the Consistent Use of "Larger."

Bid For Position complains that Defendants' construction of this claim term uses "higher amount," whereas Defendants' construction of another claim term used the locution "larger than." (Pl.Br.25.) Plaintiff protests the inconsistency. This is a distinction without a difference. To moot Plaintiff's objection, Defendants are willing to revise their proposed construction of this claim term to read: "where the bidder that bids the *larger* amount always gets priority over the bidder that bids the lower amount."[7]

---

[6] Plaintiff left the relevant page out of its *Webster's* exhibit. *See* Pl. Ex. 2. Defendants have now provided it for the Court. *See* Ex. 10.

[7] The reasons why "larger than" is more proper than "greater than" are addressed above at pages 20-21.

## VI. The Auction For Determining Continuing Priority [...] For Providing An Ongoing Service" (Claim 1[c], 11[b])

| Defendants' Construction | Bid For Position's Construction |
|---|---|
| The auction that determines priority for each instance that a service is provided during a continuing period | No construction necessary; or "continuing priority" means "ongoing priority;" "Ongoing service" means "a service that is ongoing, continuing or in progress." |

The dispute here is over the significance of the word "continuing." Defendants maintain that it means that the auction determines priority for each instance that a service is provided during a continuing period. Bid For Position denies that there is any such requirement. Consistent with *O2 Micro*, the Court should construe this claim term to resolve the parties' dispute about claim scope.

### A. Defendants' Construction Is Consistent With the Intrinsic Evidence.

This claim limitation ("the auction for determining continuing priority for providing an ongoing service") requires more than an auction for determining "priority." It requires an auction for determining "*continuing* priority." The specification explains what "continuing priority" is: the sort of priority that winning bidders obtained by using the prior art Goto.com auction system for search advertising. (Ex. 1, 1:10-22.) In the Goto.com system, advertisers bid to have their ad displayed when an Internet user used a particular keyword in an Internet search (e.g., "digital camera"). Winning bidders were awarded a particular position (first, second, third, etc.), and they then held that position for a specified period: until another advertiser entered a new bid for the same keyword. At that point, another auction would be conducted. (Ex. 4, 5:59-6:8.) In other words, the priority that was awarded was "continuing" priority that continued until another advertiser entered a new bid.

Defendants' proposed construction gives meaning to "continuing" priority in a way that honors the intrinsic evidence and creates a distinction between "priority" and "continuing priority."

**B.**     **Rather Than "Adding" a Temporal Limitation, as Plaintiff Asserts, Defendants Are Merely Clarifying the Temporal Limitation That Is Already Present in the Disputed Claim Language.**

Bid For Position complains that Defendants have added a "temporal limitation to their proposed construction" even though the claims "neither disclose nor support such a limitation." (Pl.Br.21.)  Defendants are not, however, "adding" a temporal limitation.  The disputed claim language refers to "continuing" priority, and the reference to "continuing" is there as a temporal limitation.  As Plaintiff itself noted in its opening brief, "continue" has "a temporal component." (Pl.Br.4.)  Defendants agree, as does inventor Konia

Q     But until someone outbid you, you had the continuing priority?

A     You had the continuing – priority 1, yeah.

Q     Well, was that priority continuing over that time period?

A     It's continuing for as long as – for as long as you have that particular priority, yeah.

(Ex. 3, 244:17-23).

**C.**     **Bid For Position Equates "Continuing Priority" with "Priority," and Thus Fails to Give Meaning to the Claim Term "Continuing."**

Bid For Position says that "continuing priority" means "ongoing priority."  (Pl.Br.20.)  It then argues that "[s]omething that is continuing may have multiple instances," but "that is not always true."  (*Id.*)  Accordingly, in Plaintiff's view, an auction that resolved priority for a single Internet search – a single instance – would still involve "continuing" priority.  Defendants take a different view based on the claim language itself:  that an auction for "continuing priority" must determine priority for each instance that a service is provided during a continuing period.

The flaw in Bid For Position's argument is that any auction for "priority" also involves (under Plaintiff's view) "continuing priority."  Bid For Position fails to distinguish "priority" from "continuing priority," and therefore reads "continuing" out of the claims.  *See Mangosoft, Inc. v. Oracle Corp.*, 2008 U.S. App. LEXIS 10356 at *15 (Fed. Cir. May 14, 2008) (rejecting proposed construction that "would effectively read the 'local' limitation out of the claim"); *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not

do so"). Defendants' construction properly interprets the limitation of "continuing" priority, which excludes an auction that resolves priority for a single instance of a service but does not preserve that priority for every instance of that service during a period of time.

### D. Bid For Position's Proposed Constructions Do Not Resolve the Dispute Between the Parties Over Claim Scope.

Rather than proposing a construction for the entire disputed phrase, Bid For Position asks that the Court construe two terms in the disputed phrase: "continuing priority" and "ongoing service." However, Plaintiff's proposed constructions ("ongoing priority" and "a service that is ongoing, continuing or in progress") do not resolve the parties' dispute concerning claim scope, because they do not address – one way or another – whether the auction must determine priority for each instance that a service is provided during a continuing period.

## VII. "Input Device" (Claim 11[a])

| Defendants' Construction | Bid For Position's Construction |
|---|---|
| Bidder terminal or other data entry device at the bidder's location | "input device" means "a device for transferring data into a processor system." |

Claim 11 requires the use of an "input device" in connection with the "bid management data" that the "first bidder" provides. The principal dispute is whether the "input device" must be a data entry device at the bidder's location, as Defendants assert, or whether, as Plaintiff maintains, "input device" includes any device that transfers data to a processor (such as the auction company servers to which bidders send information).

The prosecution history, which Plaintiff ignores, resolves the issue. The reference to "input device" in Claim 11 was added during prosecution by an August 4, 2003 amendment. (Ex. 2, August 4, 2003 Amendment at 5, P544.) In order to persuade the Examiner that this new claim limitation was supported by the specification, the inventor pointed to where the claimed "input device" was discussed in the specification. (*Id.* at 13, P552.) *But the inventor never referred to the portion of the specification that Plaintiff now cites* (Column 3, lines 19-26 & 53-

58). (*See* Pl.Br.26.) Instead, the inventor said that the claimed "input device" was described in the part of the specification that is now Column 3, lines 36-52:

> Bidders may further enter maximum and/or minimum bids into *the bidder terminals 175*. The online bid management system 102 keeps track of the maximum and minimum bids for each user who enters bids into the *bidder terminals* 175 into RDBMS 104.

(Ex. 1, 3:36-40, emphasis added). These "bidder terminals" were all data entry devices at the bidder location. The applicant also cited Figure 1, item 175. Item 175 is identified in the specification as "bidder terminals" (Ex. 1, 3:37) and labeled in the figure as "Bidder 1" and "Bidder 2" (indicating where the "bidder terminals" were located)."[8] The other cited figures (Fig. 4, item 177; Fig. 6, item 179; and Fig. 8, item 181) show similar network architectures for the other disclosed embodiments.

Although Plaintiff ignores the prosecution history, it does address the specification in its opening brief. Plaintiff argues that "the specification provides that the bid management data from bidders is stored in a bid management server ('151 patent, Ex. 1, Col. 3:19-26, 53-58)." (Pl.Br.26.) But the phrase at issue is an "input device," not a "storage device." Where the bid management data is "stored" is different than where the bid management data is "input."

Plaintiff's assertion that "input device" can refer to the "bid management server" where "bid management data from bidders is stored" (Pl.Br.26) also flies in the face of the language of claim 11. It specifically describes where the bid management data from bidders is stored: in "a database electrically connected to the processor for storing the first and second bids." (Ex. 1, 15:35-36.) That is different from the "input device."

Finally, Bid For Position relies heavily on the *Oxford Dictionary of Computing*. According to Plaintiff, this dictionary defines "input device" as "[a]ny device that transfers data, programs, or signals into a processor system." (Pl. Ex. 6.) However, Bid For Position

---

[8] Defendants' opening brief suggests that a "Bidder Terminals" label appeared in Figure 1. (Def.Op.Br.27.) As a point of clarification, it is the specification describing Figure 1, rather than Figure 1 itself, that states that the labeled items 175 are "Bidder Terminals." (Ex. 1, 3:37.)

conveniently omits the next sentence in the definition, which adds: "Such devices provide the human computer interface, the keyboard being the most common example." (*Id*.) An auction company server is not an "input device" because it does not "provide the human computer interface." Instead, it provides a computer to computer interface.

## VIII. "First" and "Second" (Claim 1[a, b, c, d, e, f], 11[a, b, c, d, e], 12, 13, 23, 24, 28)

| Defendants' Construction | Bid for Position's Construction |
|---|---|
| The terms "first bid" and "second bid" are used to distinguish one bid from another bid that is different from the first.<br><br>The terms "first bidder" and "second bidder" are used to distinguish one bidder from another bidder that is different from the first.<br><br>The terms "first" and "second" do not refer to time sequence. | "first" and "second" are used in the claim to distinguish two instances of the same thing. For example, "first bid" means a bid other than a "second bid," and "first bidder" means a bidder other than a "second bidder." The terms "first" and "second" do not refer to time sequence. |

The claims refer to the "first bidder" and the "second bidder," as well as to a "first bid" and a "second bid." The parties agree that "first" and "second" do not refer to time sequence. However, they disagree about whether the "first" and "second" bidder can be the same bidder, and whether the "first" and "second" bid can be the same bid.

The "context in which a term is used in the asserted claim can be highly instructive," *Phillips*, 415 F.3d at 1314, and that is true here. "First" and "second" are used precisely to differentiate between separate bidders and bids. If the first bidder could place a second bid in lieu of the second bidder doing so, the claims would have referred to "a second bid from the first bidder or from a second bidder."

Defendants' construction is also supported by the specification, which states that the "online bid management system 102 causes the relative priority for providing service to each bidder to exceed the priority for providing service with respect *to other bidders* so long as the maximum bid is not exceeded." (Ex. 1, 5:62-65, emphasis added.) This indicates that the "second bid" originates with another bidder than the "first bidder."

Plaintiff says that its proposed construction is supported by *Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1348 (Fed. Cir. 2005), but that case actually supports Defendants' construction. In that case, the claim required a "first" arm and a "second" arm. However, the Federal Circuit decided that the disclosure in the *Free Motion* specification required *two* arms, not one arm considered twice. *See id.* at 1346 ("Figure 6 shows the resistance assembly, the proximal ends of the arms, and the cable linking the *two* arms") (emphasis added). This disclosure in the specification also requires two bidders, not one bidder considered twice.

Bid For Position also argues that the terms "first bid" and "second bid" do not necessarily require the "first bid" to be a bid other than the "second bid." For example, according to Plaintiff, "a first bid by a first bidder may be $1.00 and a second bid by a second bidder may also be $1.00." (Pl.Br.3.) However, in that case, the "first bid" *is* a bid other than the "second bid," because the two bids came from different bidders, despite the fact that they happened to be bids of equal value.

## IX.    "Maintain" (Claim 1[a, d, e, f], 11[a, b, d, e], 23, 24)

| Defendants' Construction | Bid For Position's Construction |
|---|---|
| Keep | Alternative 1: No construction necessary. Alternative 2: "continue or keep [a position]" |

The dispute here is whether "maintain" should be defined to mean just "keep" or whether it should be defined to mean "continue or keep." Bid For Position says that the "ordinary meaning" of "maintain" includes both the concepts of "keep" and "continue," citing dictionaries. (Pl.Br.4-5.) But if dictionaries are used in claim construction, one must "scrutinize the intrinsic evidence in order to determine the most appropriate definition." *Free Motion Fitness*, 423 F.3d at 1348-49. In the context of this specification, a bidder who "wishes to maintain" a position of priority wants to keep it:

> Another example allows the bidder to choose a position, such as fourth in the results listing. If the system finds that the bidder has achieved the proper position in the search engine with respect to

the current term being processed, the system may reduce the bid to
a minimum which allows that bidder to *keep* the position, step 210.

(Ex. 1, 4: 55-62, emphasis added.)  The Court should therefore construe "maintain" to mean

"keep."[9]

## CONCLUSION

Defendants respectfully request that the Court adopt their construction of the disputed

claim terms.


Dated:  June 2, 2008

Respectfully submitted,


/s/_____
Stephen E. Noona
VSB No. 25367
***Counsel for Defendants Google Inc. and AOL LLC***
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
senoona@kaufcan.com

---

[9]  Once again, Plaintiff's own dictionaries provide definitions that are more appropriate –
given the intrinsic evidence – than what Plaintiff has proposed.   For example, the *American
Heritage Dictionary* defines "maintain" as "*to keep* in an existing state; preserve or retain."  (Pl.
Ex. 3, emphasis added.)  Similarly, Dictionary.com gives this definition of "maintain": "*to keep*
in a specified state; position."  (Pl. Ex. 4, emphasis added.)

Charles K. Verhoeven, *pro hac vice*
David A. Perlson, *pro hac vice*
Emily C. O'Brien, *pro hac vice*
Antonio R. Sistos, *pro hac vice*
Katherine H. Bennett, *pro hac vice*
***Counsel for Defendants Google Inc. and AOL LLC***
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
charlesverhoeven@quinnemanuel.com
davidperlson@quinnemanuel.com
emilyobrien@quinnemanuel.com
antoniosistos@quinnemanuel.com
katherinebennett@quinnemanuel.com

Thomas D. Pease, *pro hac vice*
***Counsel for Defendants Google Inc. and AOL LLC***
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
thomaspease@quinnemanuel.com

John M. Williamson, *pro hac vice*
***Counsel for Defendant AOL LLC***
FINNEGAN HENDERSON FARABOW GARRETT &
  DUNNER LLP
901 New York Avenue, NW, Suite 700
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400
john.williamson@finnegan.com

Robert L. Burns, II, *pro hac vice*
***Counsel for Defendant AOL LLC***
FINNEGAN HENDERSON FARABOW GARRETT &
  DUNNER LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400
robert.burns@finnegan.com

/s/ _____

William D. Dolan, III
VSB No. 12455
**Counsel for Defendant Microsoft Corporation**
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA  22182
Telephone:  (703) 760-1684
Facsimile:  (703) 821-8949
wddolan@venable.com


Richard A. Cederoth, *pro hac vice*
Laura L. Kolb, *pro hac vice*
**Counsel for Defendant Microsoft Corporation**
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
rcederoth@sidley.com
lkolb@sidley.com


/s/ _____

Dana J. Finberg
VSB No. 34977
**Counsel for MIVA, Inc.**
LECLAIR RYAN, PC
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, VA  23219
Telephone:  (804) 916-7109
Facsimile:  (804) 916-7219
dana.finberg@leclairryan.com


Paul D. Ackerman, *pro hac vice*
Aasheesh Shravah, *pro hac vice*
**Counsel for MIVA, Inc.**
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY  10177
Telephone:  (212) 415-9200
Facsimile:  (212) 953-7201
ackerman.paul@dorsey.com
shravah.aasheesh@dorsey.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2008, I will electronically file the foregoing with the Clerk

of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the

following:

**Counsel for Plaintiff Bid For Position, LLC**
Craig T. Merritt (VSB No. 20281)
R. Braxton Hill, IV (VSB No. 41539)
Nichole Buck Vanderslice (VSB No. 42637)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, VA  23219-3095
Telephone:  (804) 697-4100
Facsimile:   (804) 697-4112
cmerritt@cblaw.com
bhill@cblaw.com
nvanderslice@cblaw.com

Gregory S. Dovel, *pro hac vice*
Christin K. Cho, *pro hac vice*
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA  90401
Telephone:  (310) 656-7066
Facsimile:   (310) 656-7069
greg@dovellaw.com
christin@dovellaw.com

David E. Rosen, *pro hac vice*
MURPHY ROSEN & MEYLAN, LLP
100 Wilshire Blvd., Suite 1300
Santa Monica, CA  90401
Telephone:  (310) 899-3300
Facsimile:   (310) 399-7201
drosen@mrmlawyers.com

**Counsel for Defendant Microsoft Corporation**
William D. Dolan, III (VSB No. 12455)
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA  22182
Telephone:  (703) 760-1684
Facsimile:   (703) 821-8949
wddolan@venable.com

Richard A. Cederoth, *pro hac vice*
Laura L. Kolb, *pro hac vice*
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
rcederoth@sidley.com
lkolb@sidley.com

**<u>Counsel for Defendant MIVA, Inc.</u>**
Dana J. Finberg (VSB No. 34977)
LECLAIR RYAN, PC
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, VA 23219
Telephone: (804) 916-7109
Facsimile: (804) 916-7219
dana.finberg@leclairryan.com

Paul D. Ackerman, *pro hac vice*
Aasheesh Shravah, *pro hac vice*
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177
Telephone: (212) 415-9200
Facsimile: (212) 953-7201
ackerman.paul@dorsey.com
shravah.aasheesh@dorsey.com

/s/_____
Stephen E. Noona
VSB No. 25367
*Counsel for Defendants Google Inc. and AOL LLC*
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com