# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION



BID FOR POSITION, LLC,

    Plaintiff,

v.

AOL, LLC, *et al.*,

    Defendants.

CASE NO. 2:07-cv-582 JBF/TEM

## STIPULATION AND ORDER RE: RULE 30(B)(6) DEPOSITIONS

Plaintiff Bid For Position, LLC, on the one hand, and defendants Google, Inc. ("Google") and AOL, LLC ("AOL"), on the other hand, hereby stipulate, and for good cause shown the Court hereby rules, as follows with respect to the Rule 30(b)(6) deposition of Google, Inc. and related matters:

A.     Plaintiff is entitled to take the following additional depositions as requested in their Opposition Brief filed in connection with Google's Motion for a Protective Order: depositions of the defendants experts; the continuation of the Rule 30(b)(6) deposition as set forth below; and a Rule 30(b)(6) deposition of AOL, LLC as set forth below.[1] No further depositions shall be taken by plaintiff without agreement of the parties or further order of the Court.

B.     The Rule 30(b)(6) deposition of Bid For Position, LLC will commence, and the Rule 30(b)(6) depositions of Google, Inc. and AOL, LLC as set forth below will commence on dates to be agreed upon by counsel by Friday, July 18, 2008. The continuation of Rule 30(b)(6) deposition of Google shall last no more than nine (9) additional hours unless the parties agree otherwise or upon further order of the Court.

C.     Google will produce a Rule 30(b)(6) witness or witnesses knowledgeable on each of the following subjects, and prepared to testify on each on the following subjects from Plaintiff's notice of Rule 30(b)(6) deposition of Google:

---

[1] Plaintiff reserves the right to take the deposition of a Google witness with personal knowledge of how the AdWords auction works should the witness produced by Google at the 30(b)(6) deposition not have sufficient knowledge of these facts. Google reserves the right to argue that the 30(b)(6) witness did have sufficient knowledge, and that Plaintiff should not be allowed to take the additional deposition.

4. An overview of how the AdWords auction operates.

5. The manner in which Google's AdWords calculates Ad Rank for keyword targeted ads on its search network.

6. The manner in which Google's AdWords calculates Ad Rank for keyword targeted ads on its content network.

8. The manner in which Google's AdWords calculates a bidder's actual CPC for keyword targeted ads on its search network.

9. The manner in which Google's AdWords calculates a bidder's actual CPC for keyword targeted ads on its content network.

11. The manner in which Google uses a bidder's actual CPC in determining Ad Rank.

12. The manner in which Google uses a bidder's maximum CPC in determining Ad Rank.

13. The manner in which Google uses a bidder's Quality Score in determining Ad Rank.

14. Whether there is (and, if so, the duration of) any pause between when Google determines Ad Rank and when the bidders' actual CPC is determined.

15. Whether there is (and, if so, the duration of) any pause between when Google determines Ad Rank for a particular ad the next time Google determines Ad Rank for that ad.

16. Whether there is (and, if so, the duration of) any pause between when AdWords bidders submit their bids and when Google determines Ad Rank.

17. How often Google determines Ad Rank for a particular ad for keyword-targeted ads on its search network.

18. How often Google determines actual CPC for a particular ad for keyword-targeted ads on its content network.

21. How often Google determines actual CPC for a particular ad for keyword-targeted ads on its search network.

22. How often Google determines Ad Rank for a particular ad for keyword-targeted ads on its content network.

23. How Google AdWords calculates the Quality Score for determining Ad Rank for keyword-targeted ads on its search network

24. How Google AdWords calculates the Quality Score for determining Ad Rank for ads on its content network.

25. The nature and extent of the data Google is capable of receiving from bidders in connection with an AdWords auction.

26. How the data received from bidders is used to determine Ad Rank.

27. How the data received from bidders is used to determine cost per click.

28. Information about the type of input device(s) used by Google to receive data from bidders in the AdWords auction, including, but not limited to, each such device's function in the data receiving process, and where device(s) are physically located.

29. Information about the type of processor(s) used by Google to determine Ad Rank, including, but not limited to, each such processor's function in the auction process, and where the processor(s) are physically located.

30. Information about the type of processor(s) used by Google to determine CPC, including, but not limited to, each such processor's function in the auction process, and where the processor(s) are physically located.

31. Whether Google has a database connected to a processor for storing bids received from bidders in the AdWords auction, including, but not limited to, each such database's function in the auction process, and where the database(s) are physically located.

32. How the Google AdWords system determines how many advertisements will be displayed for a given search.

33. How AdWords determines where each ad will be displayed.

34. The relationship between Ad Rank and the position of the ad on the Google search results page.

35. How an AdWords auction bidder is able to select a particular position preference.

36. In those instances where an AdWords auction bidder has selected a particular position preference for displaying its ad, the process by which Google tries to display the ad in the bidder's preferred position.

37. In those instances where an AdWords auction bidder has selected a particular position preference for displaying its ad, the method by which Google tries to display the ad in the bidder's preferred position.

38. In those instances where an AdWords auction bidder has not selected a particular position preference for displaying its ad, the process by which Google determines where to display the ad.

39. In those instances where an AdWords auction bidder has selected a particular position preference for displaying its ad, the method by which Google determines where to display the ad.

40. How the AdWords Discounter (as that term is used by Google) automatically reduces a bidder's CPC to the lowest cost needed to maintain the bidder's ad position.

41. How the AdWords Discounter automatically raises a bidder's CPC in order to maintain the bidder's preferred ad position.

42. The method by which the AdWords Discounter determines the actual CPC.

43. How the AdWords Discounter monitors a bidder's competition.

44. How the AdWords Discounter monitors a bidder's competition and automatically reduces a bidder's actual cost-per-click.

45. How the AdWords Discounter automatically monitors the bidding in the AdWords auction.

46. The method by which the AdWords Discounter monitors the bidding in an AdWords auction.

47. Benefits and advantages to Google associated with use of the AdWords Discounter.

4

48. Benefits and advantages to Google's customers associated with use of the AdWords Discounter.

49. When and how many times during the auction process Google calculates a bidder's actual CPC.

50. Whether, and under what circumstances, Google adjusts an advertiser's Max CPC bid, including whether and under what circumstances Google reports to an advertiser that its Max CPC bid has been adjusted by Google.

54. Specifically describe (including without limitation the name used by Google to refer to the system, the function in the auction process, and physical location) the computer systems (including without limitation processors, servers, and databases) used by Google to determine Ad Rank, determine CPC, and store bids.

**D. Plaintiff withdraws the following categories from the notice of Rule 30(b)(6) deposition of Google:**

1. The first date that you learned or became aware of the existence of the '151 Patent and the circumstances under which such knowledge or awareness was obtained.

2. The specific steps or actions taken by you during the period following your first learning or becoming aware of the '151 Patent, to investigate, evaluate, or otherwise take due care to determine whether you had infringed or were infringing the '151 Patent or to avoid or prevent against any such infringement.

3. Each change or modification that you have made, or plan to make, to Google's AdWords system as a result of or in response to this Litigation.

7. The manner in which Google's AdWords calculates Ad Rank for placement targeted ads on its content network.

10. The manner in which Google's AdWords calculates a bidder's actual CPC for placement targeted ads on its content network.

19. How often Google determines Ad Rank for a particular ad for placement-targeted ads on its content network.

5

20. How often Google determines actual CPC for a particular ad for placement-targeted ads on its content network.

51.

b. what portion of your revenues were earned from ad auctions using computer systems (including processors, servers, and databases such as the Ads Database, Big Table, BidManager, and Mixer) located outside the United States to determine Ad Rank, determine CPC, and to store bids ("Non-U.S. Revenues")

e. what portion of your revenues were generated from Google advertising that is not placed using an ad auction.

52.

b. costs attributable to Non-U.S. Revenues;

e. what portion of your costs was attributable to Google advertising that is not placed using an ad auction.

53.

b. operating profits attributable to Non-U.S. Revenues;

e. what portion of the operating profits was earned from Google advertising that is not placed using an ad auction.

E. **Google hereby stipulates that the first time Google learned or became aware of the existence of the '151 patent was when it was first served with the complaint in this action.**

F. **AOL will produce a Rule 30(b)(6) witness or witnesses knowledgeable on each of the following subjects, and prepared to testify on each on the following subjects.**

6. Google's role in operating, maintaining and/or administering AOL's Search Marketplace.

8. Any agreements between AOL and Google concerning the administration and/or maintenance of AOL's Search Marketplace.

9. The financial arrangement between AOL and Google relating to AOL's Search

Marketplace, including any and all agreements setting forth that financial arrangement.

G.  **The parties agree to work in good faith to seek an additional stipulation on the authenticity of the following documents and to address whether they are business records for purposes of Rule 803 of the Federal Rules of Evidence. The parties reserve their respective rights on this topic if an agreement cannot be reached.**

1. GO 1-380, AOL 1-42, GOOGB 5232, GOOGB 4217 – 4220, GOOGB 4195 – 4206, GOOGB 4417 – 4421, GOOGB 4857 - 4869, GOOGB 4296 – 4306, GOOGB 4371 – 4441, GOOGB 5207 – 5223, GOOGB 5224 – 5231, GOOGB 4358 – 4362, GOOGB 4189 – 4194, GOOGB 4207 – 4216, GOOGB 4271, GOOGB 5553 -5560, GOOGB 4254 – 4266, GOOGB 4759 – 4762, GOOGB 4555 – 4611, GOOGB 6137-6138, GOOGB 6125-6126, GOOGB 6122-6123, GOOGB 6113 – 6117.

2. GOOGB4221-4254, GOOGB4771-4809, GOOGB4289-4295, GOOGB5807, GOOGB6483-6595, GOOGB6651-6758, GOOGB5889-6092, GOOGB11740-11860, GOOGB12525-12542, GOOGB12505-12508, GOOGB12509-12510, GOOGB12511-12524, GOOGB8615-8629, GOOGB8675-8700, GOOGB8709-8728, GOOGB8729-8765, GOOGB8803-8805.

H.  **The parties agree to work in good faith to seek an additional stipulation on the following topics from Plaintiff's notice of Rule 30(b)(6) deposition of Google, as to which the parties reserve their respective rights if an agreement cannot be reached.**

51 a. and c.; 52 a., c. and d.; 53 a., c. and d., 55 and 56.

I.  **The parties agree to work in good faith to seek an additional stipulation on the following topics for the Rule 30(b)(6) deposition of AOL, as to which the parties reserve their respective rights if an agreement cannot be reached.**

1. Describe in detail AOL's U.S. revenues from AOL Marketplace for each month and quarter from and after May 29, 2005.

2. Describe in detail AOL's costs attributable to its U.S. revenues from AOL Marketplace for each month and quarter from and after May 29, 2005.

3. AOL's operating profits attributable its U.S. Revenues from AOL Marketplace for each month and quarter from and after May 29, 2005, including.

4. Forward-looking projections or estimates of AOL's expected U.S. revenues or operating profits (for any future period) from AOL Marketplace made any time during the period from January 1, 2006 to the present.

5. Projected U.S. revenues and U.S. operating profits from AOL Marketplace for all or any portion of 2008.

7. How the Search Marketplace auction operates, including each and every way that the auction for ad space on AOL's Search Marketplace differs from the auction for ad space on Google's AdWords, such testimony to be provided by AOL or Google.

It is so ORDERED.

ENTER: JUL 1 8 2008

JUDGE: /s/ Tommy E. Miller
United States Magistrate Judge
United States District Court
Eastern District of Virginia

9

Agreed to by:

_____
Stephen E. Noona
VSB No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com


Charles K. Verhoeven, *pro hac vice*
David A. Perlson, *pro hac vice*
Emily C. O'Brien, *pro hac vice*
Antonio R. Sistos, *pro hac vice*
Katherine H. Bennett, *pro hac vice*
QUINN EMANUEL URQUHART OLIVER & HEDGES,
LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
charlesverhoeven@quinnemanuel.com
davidperlson@quinnemanuel.com
emilyobrien@quinnemanuel.com
antoniosistos@quinnemanuel.com
katherinebennett@quinnemanuel.com


Thomas D. Pease, *pro hac vice*
QUINN EMANUEL URQUHART OLIVER & HEDGES,
LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
thomaspease@quinnemanuel.com

*Counsel for Google Inc.*

_____
Stephen E. Noona
VSB No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

John M. Williamson, *pro hac vice*
FINNEGAN HENDERSON FARABOW GARRETT &
DUNNER LLP
901 New York Avenue, NW, Suite 700
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400
john.williamson@finnegan.com

Robert L. Burns, II, *pro hac vice*
FINNEGAN HENDERSON FARABOW GARRETT &
DUNNER LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400
robert.burns@finnegan.com

*Counsel for AOL LLC*

_____
Craig T. Merritt
VSB No. 20281
R. Braxton Hill, IV
VSB No. 41539
Nichole Buck Vanderslice
VSB No. 42637
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, VA 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
cmerritt@cblaw.com
bhill@cblaw.com
nvanderslice@cblaw.com

Gregory S. Dovel, *pro hac vice*
Christin K. Cho, *pro hac vice*
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069
greg@dovellaw.com
christin@dovellaw.com

David E. Rosen, *pro hac vice*
MURPHY ROSEN & MEYLAN, LLP
100 Wilshire Blvd., Suite 1300
Santa Monica, CA 90401
Telephone: (310) 899-3300
Facsimile: (310) 399-7201
drosen@mrmlawyers.com

***Counsel for Bid For Position, LLC***