IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

OCT 15 2008

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

BID FOR POSITION, LLC,

        Plaintiff,

v.                                       Civil Action No. 2:07cv582

AOL, LLC, and
GOOGLE, INC.

        Defendants.

## ORDER AND OPINION

On September 11, 2008, the court heard arguments with respect to the defendants' motion

for summary judgment on noninfringment filed on July 24, 2008. After careful consideration of

the briefs submitted by the parties and the arguments of counsel at the hearing, the court

**GRANTS** the defendants' motion for summary judgment on noninfringment. Because the court

finds that summary judgment is appropriate on defendants' motion for noninfringement, the court

**DENIES** as **MOOT** Bid for Position's motion for partial summary judgment with respect to

anticipation filed on July 14, 2008.

### Factual and Procedural Background

The United States Patent and Trademark Office issued Patent No. 7,225,151, entitled

"Online Auction Bid Management System and Method" (hereinafter "the '151 patent"), to the

inventor, Brad Konia on May 29, 2007.

On December 13, 2007, Bid for Position, LLC brought this instant action alleging patent

infringement in violation of the federal patent laws of the United States, 35 U.S.C. § 271, et seq.

In the complaint, Bid for Position alleges that AOL, LLC and Google, Inc., infringe upon the

'151 Patent.[1]  Bid for Position specifically asserts that Google's product AdWords and AOL's

product AOL Search Marketplace infringe on claims 1-4, 11-14, and 23 of the '151 patent.

Google and AOL allege three counterclaims against Bid for Position, and request a declaratory

judgment of noninfringement, a declaratory judgment of invalidity of the '151 patent, and a

declaratory judgment of unenforceability of the '151 patent.

On June 9, 2008, this court held a Markman hearing with respect to certain disputed

terms in the '151 patent.  On July 11, 2008, the court issued its opinion and order construing the

disputed terms (hereinafter referred to as the "Claim Construction Order").  On July 14, 2008,

Bid for Position filed a motion for partial summary judgment with respect to the anticipation

claim made by the defendants.  On July 24, the defendants filed a motion for summary judgment

with respect to noninfringment.

1.    The '151 Patent

The United States Patent and Trademark Office issued the '151 patent to the inventor,

Brad Konia on May 29, 2007.  The '151 patent involves:

> A method and system for automatically managing an auction for determining
> relative priority for a service in a system wherein priority is based on the relative
> value of related bids is disclosed.  The method comprises checking for whether a
> first bid exceeds a second bid in an auction for determining continued priority for
> providing an ongoing service for at least a first and second bidder, wherein the
> relative priority for providing the service for the first bidder is dependent on
> whether the value of the first bid exceeds the value of the second bid, and wherein
> the relative priority for providing the service for the second bidder is dependent on
> whether the value of the second bid exceeds the value of the first bid.  The method
> further comprises incrementing the first bid to a value exceeding the second bid if

---

[1]  Bid for Position also alleged that Microsoft Corp. and Miva, Inc. infringed upon the
'151 patent; however, Microsoft and Miva are no longer parties to this dispute pursuant to agreed
orders dismissing them as parties entered on July 3, 2008 and July 15, 2008, respectively.

the first bid does not exceed the second bid, thereby causing the relative priority for providing service for the first bidder to exceed the priority for providing service to the second bidder. The steps of checking and incrementing may be executed a plurality of times. The system may pause for a fixed period of time between each series of steps of checking and incrementing

('151 Patent, Abstract).

There are two independent claims in the patent, claims 1 and 11. The remaining claims, 2-10 and 12-24, are dependent claims. Claims 1 and 11 are reproduced below:

Claim 1:

A method for automatically managing an auction for determining relative priority for a service in a system wherein priority is based on the relative value of related bids, comprising:

(a)　　(1) receiving bid management data from a first bidder for managing bidding by the first bidder in the auction, (2) the auction having at least two or more positions of priority, (3) the received bid management data includes information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction;

(b)　　checking for if a second bidder holds the selected position of priority, and

(c)　　checking for whether a first bid from the first bidder exceeds a second bid from a second bidder in the auction for determining continuing priority for providing an ongoing service for the first and second bidder, wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid, and wherein the relative position of priority for providing the service for the second bidder is dependent on whether the value of the second bid exceeds the value of the first bid;

(d)　　according to the bid management data received from the first bidder, automatically incrementing the first bid to a value exceeding the second bid if the first bid does not exceed the second bid, to thereby maintain the selected position of priority for providing the service for the first bidder;

(e)　　checking for whether the first bid is higher than needed to maintain the selected position of priority that the first bidder wishes to maintain in the auction; and

(f)　　if the first bid is higher than needed to maintain the selected position of priority that the first bidder wishes to maintain in the auction, automatically reducing the first bid to a minimum which allows the bidder to keep the selected position of priority.

Claim 11:

A system for automatically managing an auction for determining relative priority for a service in a system wherein priority is based on the relative value of related bids, comprising:

(a)　　(1) an input device for receiving bid management data from a first bidder for managing bidding by the first bidder in the auction, (2) the auction having at least two or

3

more positions of priority, (3) the received bid management data including selected one of the two or more positions of priority that the first bidder wishes to maintain in the auction;

(b) (1) a processor electrically connected to a network, (2) for checking for if a second bidder holds the selected position of priority, (3) and for checking for whether a first bid from the first bidder exceeds a second bid from a second bidder in the auction for determining continuing priority on a server electrically connected to the network for providing an ongoing service for the first and second bidder, wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid, and wherein the relative position of priority for providing the service to the second bidder is dependant on whether the value of the second bid exceeds the value of the first bid, (4) and for automatically incrementing the first bid according to the bid management data received from the first bidder to a value exceeding the second bid if the first bid does not exceed the second bid, to thereby maintain the selected position of priority for providing the service for the first bidder; and

(c) a database electrically connected to the processor for storing the first and second bids;

(d) the processor further for checking for whether the first bid is higher than needed to maintain the selected position of priority that the first bidder wishes to maintain in the auction,

(e) the processor further for automatically reducing the first bid to a minimum which allows the bidder to keep the selected position of priority if the first bid is higher than needed to maintain the selected position of priority that the first bidder wishes to maintain in the auction.

The parties agreed to the meaning of four of the terms and phrases in the patent:

| Patent Term or Phrase | Agreed Construction |
|---|---|
| "bid" | "an offer of price" |
| "incrementing the first bid" | "increasing the first bid" |
| "maintain" | needs no construction |
| "first" & "second" | "First" and "second" are used in the claim to distinguish two instances of the same thing. "First bid" means a bid other than a "second bid," and "first bidder" means a bidder other than a "second bidder." The terms "first" and "second" do not refer to time sequence |

In the Claim Construction Order, the court construed the following terms and phrases in the

patent:

| Patent Term or Phrase | Court's Construction |
|---|---|
| "information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction" and "selected one of the two or more positions of priority that the first bidder wishes to maintain in the auction" | "information entered by the bidder that indicates the bidder's choice of one of the two or more positions of priority in the auction" |
| "selected position of priority" | "the specific position chosen by the bidder" |
| "checking for whether the first bid from the first bidder exceeds the second bid from the second bidder" | "comparing and ascertaining whether a bid entered by the first bidder is greater than the bid entered by the second bidder" |
| "the auction for determining continuing priority for providing an ongoing service" | "an auction that determines priority for a period of time for providing a continuing service" |
| "wherein the relative position of priority for providing the service for the first bidder is dependent upon whether the value of the first bid exceeds the value of the second bid" (and the analogous phrase in which "first" and "second" are interchanged) | "where the bidder that bids the greater amount always gets priority over the bidder that bids the lower amount" |
| "input device" | "bidder terminal, which is a data entry device" |

2.   Google's AdWords, Google's AdSense for Content, and AOL's Search Marketplace

Bid for Position argues that Google's AdWords program without the Position Preference feature, Google's AdWords program with the Position Preference feature, Google's AdSense for Content, and AOL's Search Marketplace infringe upon the '151 Patent. Adwords is used to sell Internet advertising in connection with search results on Google.com and its partner sites. AdSense for Content specifically refers to the selling of Internet advertising in connection with

content on Google's partner sites. AOL uses Google's AdWords's search technology in providing AOL Search Marketplace, and AOL Search Marketplace is a rebranded version of Google's Adwords that does not contain the Position Preference feature. Bid for Positions' allegations of infringement are identical with respect to Google's AdWords, AdSense for Content, and AOL Search Marketplace.[2]

Advertisers that are interested in advertising on Google.com or its partner websites will register to set up an advertising campaign in AdWords. The advertiser provides the text, a link to his or her website, and the keyword the advertiser wants associated with the advertisement. The advertiser also provides a bid, known as the "Maximum Cost-Per-Click" or "Maximum CPC," which indicates the maximum price the advertiser is willing to pay if an individual ends up clicking on his advertisement. Google runs an auction for the advertisements each time a search is performed on Google.com to determine the order in which advertisements will be displayed next to the search results. The order of the advertisements in the auction depends upon their "Ad Rank." Advertisements that have a higher Ad Rank are placed above advertisements that have a lower Ad Rank. The Ad Rank is determined by multiplying the bid, or Maximum Cost-Per-Click, by the "Quality Score." The Quality Score is assigned to the advertisement by Google and is a highly complex and confidential algorithm computed based upon a variety of historical factors to predict the likelihood that the individual conducting the search will find the advertisement useful. Because of this, it is possible for an advertisement with a higher bid to receive a lower Ad Rank and placement in the auction than an advertisement with a lower bid but

---

[2] Hereinafter, the court's reference to AdWords incorporates AOL's Search Marketplace and AdSense for Content, except when referencing the Position Preference feature.

higher Ad Rank.

In AdWords, the price an advertiser ultimately pays is determined after the Ad Rank is calculated, the advertisements are ranked, and the auction has concluded. AdWords computes the price based upon the next-best Ad Rank and the advertisement's Quality Score (cost = next best Ad-Rank / Quality Score). An advertiser only pays if an individual actually clicks on the advertisement. Google refers to the cost as the "Actual Cost Per Click" or "Actual CPC."

Finally, the auction is run each time a search is conducted on Google.com. For every search, AdWords will compute a Quality Score for every advertisement in the auction, will use the Quality Score and the Maximum Cost Per Click to compute the Ad Rank, will rank the advertisements based upon their Ad Rank, and will calculate the advertisers' costs.

AdWords also has a Position Preference feature that allows an advertiser to indicate a preference for a position, or range of positions within an auction. The feature must be activated by the advertiser, and the advertisers who choose to use the Position Preference feature will compete in the same auctions as advertisers who elect not to use this feature. When an advertiser activates the Position Preference feature, he may select a range of preferred positions for each keyword in which his advertisement may be displayed. The default range of positions is 1 (highest) through 10+ (10th position and anything lower). An advertiser can adjust the range to suit his purposes, and a range may be positions 1 though 5, 5 through 10+, or 4 though 4. This feature then targets the advertiser's preferred range of positions over time. The advertiser's original bid is submitted as a proxy bid to the AdWords auction, and Position Preference checks approximately every twenty-four hours to determine whether, over a series of auctions, the average position for the advertisement is close to the advertiser's preferred range of positions. If

the average position is too high, and the advertisement associated with the keyword has enough impressions, the Position Preference feature will compute a new proxy bid that is lower than the previous proxy bid in an attempt to achieve an average position that is close to the desired targeted position. The Position Preference feature will compute new proxy bids as necessary in order to maintain the average position for the advertisement associated with the key word. The Position Preference feature will not exceed the advertiser's original bid, nor will it guarantee that the advertisement associated with the keyword will appear in the desired range. Additionally, this feature will prevent an advertisement from ever appearing below the preferred range of positions, but will allow the advertisement to appear above the range of preferred positions. The Position Preference feature does not change the manner in which AdWords ranks the advertisements based upon their Ad Rank, and it also does not change the fact that an auction is run every time a new search is conducted on Google.com.

### Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "where there is no genuine issues as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Federal Circuit has held that when a comparison of the accused devices to the properly construed claims demonstrates that the accused device cannot infringe the asserted claims either literally or under the doctrine of equivalents, then summary judgment is appropriate. See, e.g., PSN Illinois, LLC v. Ivoclar Vivadent, Inc., 525 F.3d 1159, 1166-69 (Fed. Cir. 2008). "Each element contained in a patent is deemed material to defining the scope of the patented invention," and therefore, to prove infringement, the plaintiff must prove by a preponderance of the evidence that the defendant's

8

accused product contains every limitation in the asserted claims. <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 39 n.9 (1997).

There are two ways that a person may infringe upon a patented invention: literal infringement and the doctrine of equivalents. Literal infringement means that a claim is literally infringed if each properly construed claim element reads on the accused product or process. <u>See, e.g., Allen Eng'g Corp. v. Bartell Indus.</u>, 299 F.3d 1336, 1345 (Fed. Cir. 2002). The doctrine of equivalents allows a court to find infringement when an accused product or process is the substantial equivalent of the patented invention. <u>See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 535 U.S. 722, 732 (2002) ("The scope of the patent is not limited to its literal terms but instead embraces all equivalents to the claims described."). Under the doctrine of equivalents, the essential inquiry is whether the accused product or process contains elements identical or equivalent to each element of the claimed invention. <u>See Warner-Jenkinson Co.</u>, 520 U.S. at 40. The test for whether an element in the alleged infringing product or service is equivalent to a claimed element is whether the differences between the two are insubstantial to one of ordinary skill in the art. <u>See, Catalina Mktg. Int'l v. Coolsavings.com</u>, 289 F.3d 801, 812 (Fed. Cir. 2002). There are two major limitations to the doctrine of equivalents. First, a patent owner cannot use the doctrine to cover subject matter that could not have been patented because of prior art. <u>See, DeMarini Sports, Inc. v. Worth, Inc.</u>, 239 F.3d 1314, 1332 (Fed. Cir. 2001). Second, a patent owner can be estopped from benefitting from the doctrine of equivalents due to prosecution history estoppel. In other words, something an applicant gave up during the patent's prosecution to obtain allowance of the patent cannot be recaptured by the doctrine of equivalents. <u>See Warner-Jenkinson</u>, 520 U.S. at 30.

9

## Analysis

The defendants argue that they are entitled to summary judgment for noninfringment of the '151 patent with respect to AdWords without the Position Preference feature, AdSense for Content, and AOL Search Marketplace for four reasons. First, the defendants argue that AdWords does not allow the bidders to choose one of the two or more positions of priority, nor is there a specific position chosen by the bidder (claims 1[b, d, e, f]; 11[b, d, e]; 23; 224). Second, the defendants argue that AdWords does not compare or ascertain whether a bid entered by one advertiser is greater than a bid entered by another advertiser (claims 1[c]; 11[b][3]). In a related argument, the defendants argue that AdWords does not rank advertisements based upon the amount of the bids (claims 1[c]; 11[b][3]).[3] Finally, the defendants argue that AdWords does not determine priority for a period of time (claims 1[c]; 11[b][3]).

Google argues that it is entitled to summary judgment for noninfringment of the '151 patent with respect to AdWords with the Position Preference feature for four main reasons. First, Google argues that this feature does not determine priority based upon the bid amount. Second, Google argues that this feature does not provide continuing priority. Third, Google argues that this feature does not compare the bids to determine whether the bid from the first bidder is greater than the bid entered by the second bidder. Finally, Google argues that this feature does not increase an advertiser's bid with reference to another advertiser's bid to maintain the specific position chosen by the advertiser.

---

[3] The defendants raise the comparison argument and the ranking argument as two separate grounds for noninfringment because they relate to two separate claim elements. However the analysis is the same for both claim elements, and therefore, the court will analyze them together.

## A.  AdWords without Position Preference, AdSense for Content, and AOL Search marketplace

### 1.  The choice of the position of priority

The defendants argue that AdWords does not infringe upon the '151 patent because AdWords does not allow bidders to choose one of the two or more positions of priority as required in claims 1[a] and 11[a] of the '151 patent. The defendants argue that there is no specific position chosen by the advertiser in AdWords as required by claims 1[b, d, e, f], 11[b, d, e], 23, and 24. With respect to this issue, Bid for Position only asserts an argument for literal infringement, and concedes that there is no claim for infringement under the doctrine of equivalents.

According to the court's construction, the bidder enters the bid management data, which includes the bid, the maximum and/or minimum bid, and the desired bidding position. Claim Construction Order at 9-11. Claims 1 and 11 of the '151 patent require that:

> Claim 1[a]: the received bid management data includes <u>information for selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction</u>

> Claim 11[a]: the received bid management data including <u>selected one of the two or more positions of priority that the first bidder wishes to maintain in the auction</u>

The court construed the underlined portion of these claim phrases to mean "information entered by the bidder that indicates the bidder's choice of one of the two or more positions of priority in the auction." Claim Construction Order at 9-12. In construing these claim phrases, the court determined that "it is the bidder, not the system, that chooses the position of priority" because "[t]he system does not know what position to bid for or how to manage that bid until the bidder provides that information." Claim Construction Order at 11. The court also determined that the bidder's choice of position could be, but was not always, an "express" choice because the bidder

could choose the highest position possible, "which is not a specific position." Claim Construction Order at 12.

The claim phrase "selected position of priority" appears several times in both claims 1 and 11, as well as claims 23 and 24, and refers back to the claim language in claims 1[a] and 11[a] noted in the above. The court construed this phrase to mean "the specific position chosen by the bidder." Claim Construction Order at 12-14. In construing this term, the court reaffirmed that it was "the bidder that chooses his bidding position." Claim Construction Order at 13. The court also rejected the defendants' construction that the bidding position must be "expressly" chosen by the bidder for the same reasons that the court rejected the inclusion of "expressly" in the prior claim phrase. Claim Construction Order at 13-14.

In AdWords, the advertiser does not choose a position; rather AdWords assigns the advertiser a position based upon their Ad Rank, which is a combination of their bid and the Quality Score, determined by AdWords. The only information provided by the advertiser to AdWords is the bid, a link to the advertisement, and the text to be displayed. The multiplying of the bid with the Quality Score means the advertiser loses control to determine the placement of the advertisement, and a higher bid does not mean a higher placement. AdWords determines the placement of the advertisement because it determines what Quality Score to assign each advertisement. The court's claim construction of the '151 patent clearly establishes that it is the bidder that makes the choice of the position of priority, not the system, and in AdWords, the bidder does not choose the position of priority.

Bid for Position argues that an advertiser does choose a position of priority in AdWords by (1) signing up for an AdWords account and agreeing to Google's terms and conditions; (2) not

12

activating the Position Preference feature, and thus leaving the default position to be the highest position possible; and (3) entering the bid, or Maximum Cost-Per-Click. Bid for Position specifically relies upon two conditions that an advertiser agrees to in Google's terms and conditions. First, the advertiser agrees the advertisement's placement is based upon the calculation involving their bid, or Maximum Cost-Per-Click, and the Quality Score attributed to the advertisement by Google. Second, the advertiser agrees, authorizes, and consents to Google's placement of the advertisement. Neither of these conditions, however, establish that the advertiser chooses the position of priority. In fact, these conditions actually require the advertiser to agree that Google controls and chooses the placement of the advertisement by assigning the Quality Score, and calculating the Ad Rank. The court is also not persuaded by Bid for Position's argument that the bidder is choosing the highest position possible by not activating the Position Preference feature. The decision not to activate this feature is not a choice of a position of priority by the bidder because, by not activating this feature, the bidder accepts that Google will choose its position of priority. Finally, Bid for Position argues that by entering a bid, or Maximum Cost-Per-Click, the advertiser is making a choice of a position of priority. To accept this argument would essentially nullify the position of priority feature of the '151 patent because all auctions would involve positions of priority, and bidders would be choosing positions of priority in every auction simply by submitting a bid.

The court finds that the '151 patent requires that the bidder choose its position of priority in the auction. After examining the evidence in the light most favorable to Bid for Position, the court finds that no genuine issue of material fact exists as to whether the advertiser chooses its position of priority in AdWords. AdWords does not allow the bidder to choose its position of

priority because the system will assign their position through the calculation of the Ad Rank.

## 2. Comparison and Ranking of Bids

The defendants argue that AdWords does not infringe upon the '151 patent because AdWords does not compare the bids entered by the advertisers to ascertain which bid is greater. The defendants also argue that AdWords does not infringe because it does not rank the advertisements based upon their bid amounts. Bid for Position argues that AdWords infringes both literally and under the doctrine of equivalents because AdWords compares and ranks the bids after converting the bids to a monetary equivalent.

Both claims 1 and 11 of the '151 patent include the element of:

> Claim 1[c]: checking for whether a first bid from the first bidder exceeds a second bid from a second bidder in the auction for determining continuing priority for providing an ongoing service for the first and second bidder, wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid, and wherein the relative position of priority for providing the service for the second bidder is dependent on whether the value of the second bid exceeds the value of the first bid

> Claim 11[b][3]: checking for whether a first bid from the first bidder exceeds a second bid from a second bidder in the auction for determining continuing priority on a server electrically connected to the network for providing an ongoing service for the first and second bidder, wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid, and wherein the relative position of priority for providing the service to the second bidder is dependant on whether the value of the second bid exceeds the value of the first bid

The court construed the phrase "checking for whether a first bid from the first bidder exceeds a second bid from a second bidder" to mean "comparing and ascertaining whether a bid entered by the first bidder is greater than the bid entered by the second bidder." Claim Construction Order at 14-16. The court determined that the bidder, not the system, enters the bid, and therefore, "from the bidder" meant "entered by the bidder." Claim Construction Order at 14-15. The court

14

also determined that "exceeds" means "to be greater than," because "exceeds," as used in the claim language, refers to the bids and the comparison of the values of the bids. Claim Construction Order at 16. At the Markman hearing, the parties agreed that "checking" meant "comparing and ascertaining." Claim Construction Order at 14. The parties also agree that Ad Rank is not a bid.

The court construed the other claim phrase, "wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid," to mean "where the bidder that bids the greater amount always gets priority over the bidder that bids the lower amount." Claim Construction Order at 19-24. The central dispute between the parties to this claim phrase centered on the meaning of the word "value," which the court construed to mean "amount." Claim Construction Order 19-20. The court determined that the claim term "value" referred to the bid, or offer of price, and therefore, the term "value" referred to the monetary amount of the bid. Claim Construction Order at 21-22. The court rejected Bid for Position's broader definition of "relative worth, utility, or importance," and Bid for Position's argument that construing the term "value" to mean "amount" would lead to the possibility that five pesos would have a greater value than four dollars. Claim Construction Order at 21-22. The court also determined that the '151 patent required "that the first bidder, whose first bid amount is greater than the second bidder's bid amount, will always get priority over that bidder." Claim Construction Order 22.

Bid for Position argues that AdWords both literally, and through the doctrine of equivalents, infringes upon this element because Google compares the amount of each bidder's Cost-Per-Click (CPC) after it is converted to an estimated cost per impression (eCPI), and then

15

ranks them such that the higher bid amount, after conversion, gets priority over the lower bid amount. Bid for Position argues that the Quality Score is the estimated click through rate (eCTR), and the estimated click through rate is the conversion factor used to convert a bid from a dollar cost-per-click (CPC) into a bid denominated in dollar cost-per-impression (CPI). The Ad Rank is actually the estimated cost per impression (eCPI), and it is obtained by taking a bid denominated in CPC and converting it into a bid denominated in eCPI, which Bid for Position argues is a money equivalent that allows a meaningful comparison of the two bids.

Bid for Position's conversion argument appears to be an attempt to cloud the issue in an effort to create a genuine issue of material fact where one does not exist. The court finds Bid for Position has not identified any material fact in dispute to establish that AdWords literally infringes, or infringes under the doctrine of equivalents, the '151 patent with respect to these claim elements. Bid for Position has already acknowledged that in AdWords, the Maximum Cost-Per-Click is the bid and that the Ad Rank is not a bid. In AdWords, the bidder enters the Maximum Cost-Per-Click, but cannot enter or select the Quality Score or Ad Rank. The Maximum Cost-Per-Click is multiplied by the Quality Score assigned by AdWords to determine the advertisement's Ad Rank and placement in the auction. In AdWords, the advertisements are ranked based upon their Ad Rank, and not based upon their Maximum Cost-Per-Click, or bids. This is evidenced by the fact that in AdWords, an advertiser who provides a higher Maximum Cost-Per-Click may receive a lower Ad Rank and placement in the auction than an advertiser that provides a lower Maximum Cost-Per-Click. In the '151 patent, the bidder has control over his advertisement's placement based upon the bid amount, and because there is no Quality Score or Ad Rank assigned by the bid management system to the advertisement. Additionally, AdWords

16

does not compare bid prices between advertisers in selecting the placement. Under the '151 patent, the advertisements are ranked based upon a comparison of the bid amounts, and these bid amounts are entered by the bidder. There is no Ad Rank computed, and the advertisement with the higher bid amount always receives a higher ranking than a lower bid amount. In AdWords, the system, not the bidder, controls the advertisement's placement based upon the Quality Score and Ad Rank. Finally, the Ad Rank also includes the Quality Score, which is based upon AdWords's assessment of the advertisement, and this affects the advertisements placement. The Quality Score is a judgment made of the advertisement and the keyword attributed to that advertisement to determine the likelihood that an individual will find that advertisement useful when it conducts a search with that keyword. The '151 patent does not assess or evaluate the advertisements of the bidders when determining their ranking.

With respect to the alleged infringement under the doctrine of equivalents, the court finds that there is no genuine issue of material fact to show that ranking of advertisements based upon their Ad Rank is substantially similar to the ranking of advertisements based upon their bid amounts. First, an advertiser controls their ranking when it is based upon the bid amount, but an advertiser does not control their ranking when it is based upon Ad Rank. Second, the conversion of a bid to an Ad Rank is not the same thing as converting pesos to dollars because the conversion of a bid to Ad Rank involves the inclusion of another element, a quality assessment of the advertisement performed by AdWords. The Quality Score, alleged by Bid for Position to be just a conversion factor, is actually created by AdWords and evaluates each advertisement's relationship to the keyword. Its an advertisement-by-advertisement determination that judges the appeal of that advertisement to a user that searches with that keyword. When a peso is converted

17

to a dollar, there is no quality evaluation by the auction system; it is simply converted based upon the monetary exchange rates. Additionally, both the peso and the dollar are money, and the conversion of a peso to a dollar, and vice versa, does not alter their identity as money. The conversion of a dollar to a peso, and vice versa, also does not divest the bidder of control over the advertisement's placement. An Ad Rank, however, is not the monetary amount of the bid, and the conversion of a bid to an Ad Rank changes the nature or status of the bid from a monetary amount into a nonmonetary quantity. The conversion of a bid into an Ad Rank also divests the bidder of control over the placement of the advertisement, because the Quality Score affects the advertisement's placement.

The court, therefore, finds that there is no genuine issue of material fact with respect to these claim elements, and AdWords does not infringe upon the '151 patent.

3.      Continuing Priority

The defendants argues that AdWords does not infringe upon the '151 patent and does not determine priority for a period of time because AdWords does not carry the outcome of an auction from one keyword search to the next. Bid for Position argues that AdWords system of recomputing the bid for each auction is the same as incrementing the bid, and therefore, AdWords does manage a bidder's bids over multiple auctions.

Pursuant to claims 1[c] and 11[b][3], the '151 patent applies to an "auction for determining continuing priority for providing an ongoing service," which the court construed to mean "an auction that determines priority for a period of time for providing a continuing service." Claim Construction Order pp. 17-19. At issue in this phrase was the meaning of the term "continuing priority." Claim Construction Order 17. The court determined that the term

18

"continuing priority" had a temporal quality but it was not a fixed period of time. Claim Construction Order p. 17. In making this determination, the court found that the '151 patent allows the bidder to maintain its position of priority while the bid management system goes through the process of checking and incrementing, and the bidder holds that position of priority until it was no longer possible to maintain that position without increasing the bid to an amount greater than the maximum bid set by the bidder. Claim Construction Order 17. The court rejected the defendant's proposed construction of "priority for each instance" because "for each instance" could mean there are multiple different occurrences, and that does not mean they are occurring continuously over time. Claim Construction Order 18.

AdWords does not determine priority for a period of time, it only determines an advertisement's priority or position for one auction and search. When a new search is conducted, an advertisement's priority or position in the auction is recalculated. The advertisement is given a new Quality Score and Ad Rank for every auction. The advertisement's new Ad Rank is calculated without taking into consideration the position the advertisement received in the prior auction, and thus each auction is a separate event that does not take into account the prior auction results or the advertisement's positions in the prior auction. While it is possible for the advertisement to have the same Ad Rank and position from one auction to the next, it is a result of mathematical chance, not the deliberate action of AdWords to ensure that the advertisement has the same position from one auction to the next.

Bid for Position argues that even holding a position of priority for one auction qualifies as priority for a period of time. At first glance, this argument seems persuasive, but to accept Bid for Position's argument would render the distinction between "continuing priority" and priority

meaningless. The idea of continuing priority means that the bidder is able to keep his position of priority through multiple auctions, and the system will manage the bidding to ensure that the bidder keeps that position through multiple auctions. In the '151 patent, the bidder holds that position of priority throughout the process of checking and incrementing by the bid management system, and that position is maintained until it is no longer possible without increasing the bid amount above the maximum bid set by the bidder. Claim Construction Order 17. In AdWords that the bidder only holds a position for one auction, and a new position and a new Ad Rank is calculated for each subsequent auction without attempting to ensure the advertisement keeps the same position. This cannot be continuing priority because the position is never intended to be held for more than one auction.

Bid for Position also argues that AdWords manages the bidding to maintain the selected position of priority through the AdWords Discounter. While the defendants do not raise the issue of maintaining a selected position of priority as a basis for summary judgment for noninfringment, this issue is related to the continuing priority concept. The AdWords Discounter is the method and manner in which Google determines how much to charge an advertiser after the auction and bidding have concluded. After the auction concludes, and if a user clicked upon the advertisement, Google then determines how much to charge the advertiser by dividing the next-best advertisement's Ad Rank by the current advertisement's Quality Score. This formula does not take into consideration the advertisement's positions in prior auctions in determining how much to charge the advertiser, therefore, the Ad Words Discounter does not provide continuing priority. The determination of how much to charge an advertiser also does not affect an advertisement's placement in another auction. Therefore, the court finds that there is no

20

genuine issue of material fact with respect to the claim element of continuing priority, and

AdWords does not infringe upon the '151 patent.

## B.    AdWords with Position Preference

Bid for Position did not assert separate infringement arguments for AdWords with

Position Preference in their brief or at oral argument, and therefore, seems to implicitly concede

that if the court determines that AdWords without Position Preference does not infringe, then

AdWords with Position Preference does not infringe. Pl. Br. at 30 ("Therefore, where the

position preference feature is activated, AdWords infringes the '151 patent in the same way as

AdWords without the position preference feature," and "[t]here is nothing about activating the

position preference feature that would cause an otherwise infringing AdWords auction not to

infringe."). The court, however, finds it prudent to address Google's arguments for

noninfringment with respect to AdWords with Position Preference, even though the court has

determined that AdWords without Position Preference does not infringe upon the '151 patent.

First, Google argues that activating the Position Preference feature does not alter the

determinations that AdWords does not determine priority or rank advertisements based upon bid

amounts. While the Position Preference feature allows a bidder to enter a range of preferred

positions, it is AdWords that still determines the advertisement's position based upon the Ad

Rank. Therefore, AdWords with the Position Preference feature does not infringe upon this

element of the '151 patent. With respect to Google's second argument, the court finds that the

use of the Position Preference feature does not provide the advertiser with continuity priority.

The Position Preference feature will check the advertisement's positions every twenty-four hours

to determine if the advertisement is placed within the preferred range, and if not, it will then

compute a new proxy bid. However, a new auction is still run for each search, and a new Ad Rank and position are calculated each search, and therefore, there is no continuing priority. Third, Google argues that activating the Position Preference feature in AdWords does not cause AdWords to compare bids to determine which is greater. When the Position Preference feature computes the new proxy bid it does not take into consideration the other advertisers' bids. The Position Preference feature examines the advertisement's placement with a particular keyword over a time period of approximately twenty-four hours to determine what the new proxy bid should be. The feature does not "compare and ascertain whether a bid entered by the first bidder is greater than the bid entered by the second bidder," and therefore, does not infringe upon this claim element of the '151 patent. On a related argument, because activation of the Position Preference feature does not cause AdWords to take into account other advertisers' bids in computing a proxy bid and does not compare bids, the Position Preference feature also does not cause AdWords to increase the value of one bid to a value exceeding another bid to maintain the position of priority. The computation of the proxy bid does not include consideration of what the other advertisers are bidding, and so AdWords with Position Preference does not increase a bid in relation to another advertiser's bid.

In conclusion, the court finds that there is no genuine issue of material fact establishing that AdWords with Position Preference separately infringes upon the '151 patent, and therefore summary judgment in favor of the defendants is appropriate.

## Conclusion

For the reasons set for above, the court finds that summary judgment in favor of the defendants is appropriate because there is no genuine issue of material fact in dispute with

22

respect to noninfringement by AdWords, AdWords with Position Preference, AdSense for Content, or AOL Search Marketplace. The record establishes that AdWords, AdSense for Content, and AOL Search Marketplace do not infringe, either literally or under the doctrine of equivalents, because those products do not allow the advertiser to choose the position of priority, those products do not compare the bids of advertisers to determine which is greater, those products do not rank the advertisements based upon the bid amounts, and those products do not provide continuing priority. The record also establishes that the Position Preference feature of AdWords also does not infringe upon the '151 patent because in AdWords with Position Preference, priority is still not determined by bid amount, there is still no continuing priority, bid amounts from different advertisers are not compared to one another, and bids are not increased in relation to other bid amounts. Therefore, the court **GRANTS** the defendants' motion for summary judgment for noninfringement.

The court also **DENIES** as **MOOT** Bid for Position's motion for partial summary judgment regarding anticipation because the court has determined that the defendants' products do not infringe upon the '151 patent.

The Clerk is **REQUESTED** to send a copy of this Order and Opinion to counsel of record.

It is so **ORDERED**.

/s/

Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 15, 2008